[S. F. No. 13748. In Bank.—November 22, 1933.]

WM. M. STAFFORD, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

. Carey Van Fleet and J. J. Dunne for Petitioner.

Frederic E. Supple and Philbrick McCoy for Respondent.

THE COURT.—This is a review of the proceedings before The State Bar involving charges against the petitioner as an attorney at law, and of the recommendation of the Board of Governors that the petitioner be disbarred.

The petitioner, at the present time about forty-one years of age, was admitted to practice law in this state in May, 1914, and since that time has practiced his profession in San Francisco. In July, 1928, by notice to show cause, he was charged with the commission of specific acts involving moral turpitude, dishonesty and corruption. The local administrative committee of San Francisco, before which the charges were heard found that in January, 1924, the petitioner without authority had effected on behalf of his client, Clara K. Smith, a settlement of a claim of damages for personal injuries for the sum of $350, which sum he received. The committee found that the petitioner without authority had signed the names of his clients, husband and wife, to a release and satisfaction, to which he procured a notarial

certificate of acknowledgment; that he delivered the release pursuant to the terms of the settlement; but that the facts of the settlement and the receipt of the moneys were not communicated nor revealed to his clients for a period of eight months; that discovery thereof was made independently and that upon the clients' demand through another attorney the petitioner paid the sum of $350, together with an additional sum of $150 for retaining the money and as attorney fees. The recommendation of the committee on that proceeding was that the attorney be disbarred.

In March, 1929, the petitioner was cited to answer similar charges in another matter. The hearings on these charges were held before the San Francisco local administrative committee No. 4. That committee found substantially the following facts:

In March, 1923, the petitioner represented Minnie Lubbe in a divorce action in which she was the plaintiff. In the absence of Minnie Lubbe from the state, without her knowledge or authority, the petitioner signed her name to a property settlement agreement between the spouses, secured a notarial affidavit of acknowledgment thereto, and delivered the agreement. Pursuant to this agreement the petitioner received the sum of $3,000, the full amount of the settlement. He never at any time communicated the fact of the settlement nor the terms thereof nor the fact of the receipt of the money to his client. Early in November, 1923, Minnie Lubbe returned to San Francisco. On November 16, 1923, she died. The petitioner represented the executors in the probate of her will. Until September, 1924, no disclosure of the foregoing facts was made to the executors by the petitioner.

In February, 1924, the petitioner affixed the signatures of the executors to a petition for leave to execute a contract for the sale of land belonging to the estate, and affixed the signature of one of the executors to the affidavit of verification. One of the executors was absent from the state, but the other testified at the hearing on that petition. The petition was granted. The attorney signed the names of the executors to a deed, had a certificate of acknowledgment attached, and delivered it to the grantees. About March 1, 1924, he received the sum of $5,000 as a portion of the purchase price. Knowledge of the receipt of this sum was

withheld from the executors until September, 1924. In that month the executors discovered the facts in all the foregoing transactions, and procured a substitution of attorneys. Full restitution of the moneys in both transactions was made by the petitioner, who also delivered to the executors a document executed by Wm. F. Stafford, his father, guaranteeing restitution to the extent of $14,058.50, named as the amount involved in the Lubbe matters, including costs, expenses and attorney fees.

The local administrative committee No. 4, in its recommendation, stated that had it been called upon in 1925 to act it would unhesitatingly have recommended disbarment, but in view of the fact that six years had elapsed since the events disclosed by the inquiry and five years since full restitution had been made, it preferred under the particular facts, and in the light of some showing of rehabilitation since, to recommend that the proceeding be treated by the Board of Governors as though it were one for reinstatement and that further proof of rehabilitation be received.

The proceedings in the Smith and the Lubbe inquiries were consolidated before the Board of Governors. That board, however, rejected the recommendation of the local administrative committee No. 4 in the Lubbe matter, refused to receive further evidence of rehabilitation offered by the petitioner, and on September 20, 1929, by a vote of ten to three passed a resolution recommending disbarment.

Upon a review of the foregoing proceedings this court felt impressed by the showing on behalf of the petitioner in support of his request that the recommendation of the local administrative committee No. 4 be adopted. Therefore, by an order made on October 27, 1931, it referred the proceedings back to the Board of Governors with instructions to conduct an investigation into the professional conduct of the petitioner during the period intervening between the time of the alleged offenses and the date of such further inquiry, and return its findings to this court. The board appointed the personnel of the local administrative committee No. 4 hereinabove referred to as a special local administrative committee to conduct the special inquiry and report to the board. Hearings were conducted by that committee at numerous meetings from January 31, 1932, to

June 10, 1932. The record of those meetings discloses the following:

The petitioner voluntarily presented evidence of numerous collections handled on behalf of clients in various types of claims, wherein settlement by the petitioner with his client in each instance was shown and not questioned. In one or two cases in which the petitioner reported that complaint or dissatisfaction on the part of the client was indicated, any question so arising was apparently satisfactorily explained to the committee. At the close of this testimony the committee asked the petitioner whether there were any other cases in which clients had made complaint, or wherein it was claimed that the petitioner owed the client money at that time. To these questions the petitioner gave answers in the negative. The committee then, on its own initiative, conducted an inquiry into the history of the transactions of the petitioner as attorney for a corporation known as Sisters of the Presentation. The petitioner became the attorney for that corporation during the latter part of the year 1928. The immediate purpose of his employment was to assist his clients to raise funds for the erection of a new school building at Turk Street and Masonic Avenue in San Francisco. From time to time during a period commencing at that date the president of the corporation delivered to the petitioner various sums of money, aggregating between $38,000 and $40,000 to be invested in the stock market. These funds were commingled with the petitioner's personal funds and no separate account thereof kept.

About December, 1929, negotiations with Bank of America for a loan of $150,000 secured by the property at Turk and Masonic were consummated by the petitioner. The funds from this loan passed into a trust account opened by the petitioner in his name. Construction of the building was commenced, but the procurement of further funds became necessary. During this time many documents, applications, reports, deeds, checks, some of the latter in blank, and notes were signed and executed by the Sisters at the petitioner's request. Further loans could not be obtained on the property at Turk and Masonic. Among the papers which the Sisters signed were a note for $50,000, a deed of trust on some Berkeley property owned by the Sisters securing the same, and an unsecured note for $20,000. There is evidence

that the Sisters executed these documents, among others, without reading them, without being advised of their contents or purport by the petitioner, and without any knowledge that such loans had been obtained and such security given until the loans were called in June, 1931. The proceeds from these loans also passed into the petitioner's trust account. Before the close of the year 1930 the petitioner, with the authority and consent of his clients, effected a $250,000 bond issue which realized the sum of $233,375. These funds were disbursed by a title company, $150,000 thereof to pay off the first loan, further obligations in the building operations, and on November 19, 1930, a check for the balance of $6,899.23 from that fund was deposited by the petitioner in his personal account.

About June, 1931, and thereafter the petitioner's clients demanded an accounting, making several such demands. They engaged another attorney. In September, 1931, the petitioner rendered a statement of all moneys received and disbursed, with the exception of the moneys received for stock investment purposes. That statement showed a balance unaccounted for of $58,042.24. On September 25, 1931, the petitioner delivered to his former clients a promissory note and a written guarantee signed by himself, each in the sum of $98,542.24, representing the above balance, the moneys received for investment on the stock market, and further sum more recently received by him. A subsequent statement dated in March, 1932, delivered to his former clients showed the amounts received and disbursed for speculation on the stock market. The petitioner testified and now claims that all of the foregoing sums were used in stock market speculation with the consent and authority of the Sisters; and that all thereof were lost. Nevertheless there is in evidence a statement dated March 21, 1932, addressed to his former clients, which places the loss sustained in stock speculation at the sum of $22,903.59, and shows a supposed balance remaining from all sums received of $61,857.65. The committee found that the petitioner was unable to or refused to account for more than about $20,000 handled in stock broker's accounts. No further accounting was made to the committee. The bank statements in evidence showed no balance in the petitioner's bank accounts. Up to the time of the hearing the petitioner had paid back to the Sisters

no more than the sum of $500. The petitioner never rendered a bill for legal services in relation to any of the foregoing transactions.

The committee reported its conclusion that the proof was insufficient to warrant a finding that rehabilitation was established, or a recommendation of anything less than disbarment.

■ The petitioner urged before the committee and now urges as an excuse for his failure to account further, the Sisters' right to invoke the privilege relating to confidential communications between attorney and client. That privilege obviously does not exist when the question is, "What has become of trust funds?" propounded by a duly constituted body or tribunal otherwise under the law entitled to an answer. Furthermore, any privilege which could be said to have existed was waived by the Sisters themselves, who testified fully before the committee. ■ The petitioner urged as a further excuse that there is a controversy and litigation pending between the Bank of America and the Sisters of the Presentation involving the validity of the claims of the former to judgments on the $50,000 and $20,000 notes, etc., and that the present investigation might affect the issues in that controversy. The present investigation is not a proceeding to try and decide those issues, and any incidental finding thereon could have no evidentiary or other bearing or value on a trial thereof in the appropriate tribunal. Furthermore, we are at a loss to comprehend how a full and *proper* accounting of trust funds by the petitioner could affect adversely any interest which he or his former clients might have in any possible controversy, pending or imminent. We may give all the consideration asked by the petitioner to the possible interest of his former clients in the outcome of such controversies as bearing upon the weight to be accorded their testimony in this inquiry. We may leave out of consideration every element in this case except the undisputed fact that the petitioner has been entrusted by his former clients with the possession and handling of large sums of money. Still we are compelled to give due weight to the reasonable inference drawn by the committee that if the petitioner could have made a full and proper accounting of the whereabouts of such funds, or his disposition or disbursement of them, he would not have

refused to do so. Thus we must come to the conclusion that the petitioner himself has blocked any possible different action or order herein than an adoption of the finding of the committee that rehabilitation is not established and that the petitioner has not shown that he is entitled to pursue the practice of the law.

It is therefore ordered that the petitioner, Wm. M. Stafford, be and he is hereby disbarred from the further practice of law in this state, and that his name be and it is hereby stricken from the roll of attorneys and counselors at law of the state of California.

Rehearing denied.