[S. F. No. 17782. In Bank. Dec. 28, 1948.]

VINCENT HALLINAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Hallinan, MacInnis & Zamloch and James Martin MacInnis for Petitioner.

Jerold E. Weil for Respondent.

THE COURT.—The Board of Governors of the State Bar recommended the suspension of petitioner from the practice of law for one year. Each member of the local administrative committee of three, recommended a different penalty, one advised suspension for three months, one a public reproval, and the third a private reproval.

The disciplinary proceedings arose out of the conduct of petitioner in the settlement of an action in which he was counsel for plaintiff, Walter S. Hobart, and in which Theodore J. Roche was counsel for defendants. Plaintiff had obtained a judgment for a sum over $42,000 against defendants which was reversed on appeal for error in jury instructions. (*Hobart v. Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958].) Following the reversal it was agreed between petitioner and Roche that a settlement of $40,000 was acceptable. Petitioner, having a broad power of attorney from Hobart, signed the latter's name to the release, simulating his signature, and had

it acknowledged. The settlement check was turned over to petitioner by Roche and he endorsed Hobart's name on it and cashed it. He deducted his fee and costs from the amount realized and sent the balance to Hobart, who, by letter acknowledged receipt of it and gave no indication that he was dissatisfied with the settlement and the payment to him, except for minor items of costs.

It is upon the claim that petitioner knew that Roche wanted Hobart's personal signature on the release and deceived him in simulating it, and having it acknowledged, that respondent bases its claim of dishonesty and deception as ground for discipline.

The local administrative committee found in accord with the foregoing facts that Roche delivered the settlement release and dismissals to petitioner and "advised [petitioner] that he wanted the signature of said .Walter S. Hobart on said release and on said dismissals acknowledged before a notary public." The release recited that Hobart, the party of the first part, in consideration of the specified sum, released the defendants; and at the end bore a line under which were the words "Party of the First Part" and another preceded by "Witnessed and Approved by" and followed by "Attorney for said First Party,". It was also found the dismissals had provided a signature line for Hobart and one for his counsel; that Roche "believed the signatures on said release and dismissals purporting to be the signatures of said Walter S. Hobart were the personal signatures of said Walter S. Hobart, and he believed that said Walter S. Hobart had appeared before said notary and acknowledged his signature on said instruments, and said Theodore J. Roche would not have made said payment of $40,000 if he had not so believed said signatures to be the personal signatures of said Walter S. Hobart.

"The idea of [petitioner] in simulating the signature of said Walter S. Hobart on said instruments was to give said Theodore J. Roche the impression that they had actually been signed by said Walter S. Hobart. However, [petitioner] believed that he had the legal power and authority to sign the name of said Walter S. Hobart to said release and said dismissals under the power of attorney from said Walter S. Hobart to [petitioner], and [petitioner] further believed that he was not legally required to show that said instruments were executed by him as attorney in fact for said Walter S. Hobart, or that the notary's certificates of acknowledgments

of the signatures of said Walter S. Hobart be in form prescribed by section 1192 of the California Civil Code for certificates of acknowledgment by an attorney in fact.'' In regard to the acknowledgment of Hobart's signature by a notary, it appears that the acknowledgment was not in the form of an acknowledgment by one having a power of attorney, but rather where the person signing personally appears, and in this connection the committee said: ''[Petitioner] usually engaged Alfred D. Martin, a Notary Public in and for the City and County of San Francisco, State of California, to take acknowledgments of instruments, and in such connection it was customary for [petitioner] to leave instruments to be so acknowledged in a basket in [petitioner's] office, and it was [petitioner's] understanding with said notary public that when instruments were placed in said basket for acknowledgment the signatures thereon were the true signatures of the parties whose names appeared thereon, and [petitioner] intended said notary public to rely upon [petitioner's] representations to that effect. [Petitioner], after signing the name of said Walter S. Hobart to said release and said dismissals in a manner, style and form so as to simulate and imitate the handwriting of said Walter S. Hobart, placed said instruments in said baskets, and said notary public did execute and attach to said release and dismissals his notarial certificate attesting that said Walter S. Hobart had appeared before him, said Alfred D. Martin, and acknowledged to him, said Alfred D. Martin, that he, said Walter S. Hobart, had executed said release and said dismissals to which said certificates were attached.''

In relation to petitioner's awareness of Roche's wishes in regard to Hobart's personal signature on the settlement papers, petitioner testified: ''Q. You understood all the time Mr. Roche did require Hobart's signature upon the dismissal and upon the release? A. Yes. Q. What was your idea in simulating Mr. Hobart's signature to give Mr. Roche the impression that they had actually been signed by Mr. Hobart? A. I would be frank—I would say 'yes'. I would have to say that.''

After the settlement was consummated, when informed that Hobart had not personally signed the settlement papers, Roche paid $5,000 to a representative of Hobart and obtained a release signed by him for the reason, as stated by Roche, that he feared embarrassment from possible litigation challenging the validity of the settlement consummated with

petitioner. Upon discussing the matter with petitioner the latter said that he signed Hobart's name under the power of attorney and was willing to reimburse Roche for his expenditure and also to guarantee the validity of the settlement.

From the foregoing it is evident that petitioner practiced a deception upon Roche, that is, by leading Roche to believe that Hobart had personally signed the settlement papers and obtained an acknowledgment of that signature in an improper manner. Although he may have been legally authorized to simulate Hobart's signature under his power of attorney, rather than signing Hobart's name as principal, and his own name as attorney in fact, yet he should not have led Roche to believe that Hobart had personally signed, knowing that Roche expected and thought he was getting Hobart's signature. Such conduct should not be condoned.

This brings us to the question of the discipline to be imposed. On that subject we must give consideration to the finding that petitioner was acting in entire good faith in the belief that he was legally authorized to execute the settlement papers in the way that he did. It is not questioned that petitioner had the legal right under his power of attorney to simulate Hobart's signature, or that such execution was legally binding upon Hobart and constituted a legally binding settlement for the protection of Roche and his clients. Roche testified that he is not making any complaint concerning petitioner's action and Hobart raised no objection to the settlement when his share was paid to him. Petitioner took immediate steps to protect Roche from the consequences of the imposition upon him by Hobart and his representative and it does not appear that Roche was in such a position under the law that he had to submit to that imposition. Considering all of these factors together with the recommendations of the members of the local administrative committee a suspension of three months, which is the maximum recommended by a member of the local administrative committee, is adequate discipline, and it is ordered that petitioner be suspended from the practice of law for a period of three months commencing April 1, 1949.

The opinion and judgment were modified to read as above on January 20, 1949 and February 28, 1949.