[S. F. No. 18269. In Bank. Feb. 2, 1951.]

LAWRENCE W. ALLEN, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Robert W. Kenny for Petitioner.

Aubrey N. Irwin and Jerold E. Weil for Respondent.

THE COURT.—In this disciplinary proceeding, the Board of Governors of The State Bar recommended that petitioner be suspended from the practice of law for 60 days.

In March, 1948, Temple of Yahweh, Inc., a corporation, was indebted in the sum of $500 to Mr. and Mrs. Linster for money theretofore advanced by them. Mrs. Linster was the treasurer of the corporation. A mortgage on property situated in the city of Los Angeles, owned by the Temple Corporation, was executed by Mr. Crowell, its president, on behalf of the corporation, and recorded. Petitioner was attorney for the Temple, and was named as mortgagee and payee in a copy of a note for $500 set forth in the mortgage. The Temple was not indebted to petitioner. Petitioner was named as mortgagee and payee without his knowledge, and at the request of the Linsters, as they did not want their names to appear of record in the transaction. They understood, however, that the note and mortgage were to protect their $500 claim against the Temple. Petitioner was away from Los Angeles at the time the mortgage was executed and he had no knowledge of the transaction until April or May of 1948, when, according to his testimony, he was advised of it by

Crowell, who stated that both a note and mortgage had been executed naming petitioner as mortgagee and payee. Petitioner also testified that he did not know that the Linsters were the real beneficiaries of the note and mortgage until after this proceeding was instituted before The State Bar.

The Temple was involved in bankruptcy proceedings in March, 1948. A settlement was reached, whereby certain real property, including that embraced in the mortgage, was transferred by the Temple to the clients of L. H. Phillips, an attorney, and Phillips' clients agreed to pay all indebtedness against the property including the instant mortgage.

In November or December, 1948, Phillips communicated with petitioner by letter and telephone, stating that he desired to pay the mortgage and clear the property. He requested that "the note," plainly referring to the note which was given concurrently with the mortgage, a copy of which appeared therein, and the mortgage, together with an executed satisfaction, be delivered to him upon his payment of the $500. The Linsters called at petitioner's office and he told them to bring the note and mortgage to him to deliver to Phillips. After a search, Mrs. Linster found the mortgage, but was unable to find the note. There was some discussion between Linster and petitioner, and Linster requested petitioner to prepare a substitute note. There is some conflict as to whose idea it was. At any rate, petitioner prepared one and Linster retired to the next room, and out of petitioner's presence, signed the Temple's name to it and Crowell's name as president of the Temple Corporation. Petitioner knew that Crowell was not in the next room at that time. He also knew that the note was not executed by Crowell. Petitioner delivered the mortgage, substitute note and satisfaction (the latter executed by himself) to Phillips and received $500 which he handed to Linster who paid him $50 as his attorney's fee.

Phillips testified that he would not have paid the money if he had known that the note was not the original. Petitioner testified that he thought it was proper to make the substitute note and for Linster to sign Crowell's name to it inasmuch as he was the payee; that Linster had authority from the Temple to do it; that no alteration was made in the note and there was no question of the obligation of Phillips' clients, the purchasers of the property in the settlement agreement, to discharge the debt. He said he thought Phillips was not entitled to the note; that it should go back to the maker, but

he also stated that he gave him the substitute note to satisfy his demand for the original note, and from the evidence it may be inferred that Phillips demanded and thought he had received a note which was executed contemporaneously with the mortgage.

The findings of the local committee were in accordance with the above facts, except that: It was found that the Linsters did not know when the mortgage was executed that it was for their protection (there is evidence to that effect); that petitioner told the Linsters that he could not find an original note and that he thought none had been executed. It was also found that petitioner in obtaining the $500 ". . . led . . . Phillips, . . . to believe, and the latter did believe, that the note presented to him was the original note made at the time said mortgage was made and executed; that (petitioner) did not inform said L. H. Phillips that the note presented was not the original note or that it had been prepared as a substitute for the original note, or that the original note had not been signed, or that the original note had been lost."

Based on the findings it was concluded that petitioner had violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068), and committed acts involving moral turpitude and dishonesty. (Bus. & Prof. Code, § 6106.) The committee recommended public reprimand. The Board of Governors approved the committee's findings but recommended 60 days' suspension.

Petitioner urges that no one has suffered or will suffer any loss by reason of his conduct; that in order to clear the title to the property the mortgage had to be paid in any event, regardless of the note it secured and to that end he executed a satisfaction of mortgage; that Phillips has not offered to cancel the satisfaction; and that Phillips' clients' interests were not affected, as they were obligated to pay the mortgage regardless of the note. With reference to the possibility that the original note might turn up in the hands of a holder in due course to the embarrassment of Phillips' clients, petitioner asserts that such cannot happen as it would require petitioner's endorsement which has not been made, and it is not to be supposed he would endorse and try to collect it twice.

Assuming the soundness of the foregoing, nevertheless there might have been a claim by Phillips' clients that the mortgage was not an encumbrance that was covered by

the assumption agreement unless it truly represented a debt, and without a note, there was no such debt. The case is closely analogous to *Hallinan* v. *State Bar*, 33 Cal.2d 246 [200 P.2d 787], where the attorney simulated his client's signature to settlement papers which were given to the attorney when the settlement was made, knowing the latter attorney believed the client had personally signed them. Discipline was held to be proper although the attorney had power of attorney to sign for his client and no loss was suffered thereby. We there said (p. 249): "From the foregoing it is evident that petitioner practiced a deception upon Roche, that is, by leading Roche to believe that Hobart had personally signed the settlement papers and obtained an acknowledgment of that signature in an improper manner. Although he may have been legally authorized to simulate Hobart's signature under his power of attorney, rather than signing Hobart's name as principal, and his own name as attorney in fact, yet he should not have led Roche to believe that Hobart had personally signed, knowing that Roche expected and thought he was getting Hobart's signature. Such conduct should not be condoned."

Therefore, it is ordered that petitioner be suspended from the practice of law for a period of 60 days, as recommended by the Board of Governors, commencing 30 days after this opinion is filed.