[L. A. No. 23030.   In Bank.   Aug. 5, 1955.]

A. P. COVIELLO, Petitioner v. THE STATE BAR OF
CALIFORNIA, Respondent.

58

A. P. Coviello, in pro. per., Hiram T. Kellogg and John C. Miles for Petitioner.

Ernest W. Pitney, Jack A. Hayes and Garrett H. Elmore for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of The State Bar that petitioner August Paul Coviello, be suspended from the practice of law in this state for a period of six months. The local committee had recommended a three months' suspension. In making its recommendation the board took into consideration a prior suspension of 30 days ordered by this court. (*Coviello* v. *State Bar* (July 14, 1953), 41 Cal.2d 273 [259 P.2d 7].)

Petitioner was originally charged (Dec. 9, 1952) with violations of his oath and duties as an attorney and the commission of acts involving moral turpitude (Bus & Prof. Code, §§ 6067, 6068, 6106) in that he entered into a contingent fee agreement to represent Florence V. Anderson in a domestic relations matter. During the second day of the hearing, on January 22, 1953, a second count was added charging that "between the 10th day of July, 1952, and the 21st day of August, 1952 [he] filled in, or caused to be filled in, the name of a grantee in two certain deeds dated July 30, 1951, theretofore signed and acknowledged by Clyde Norbert Anderson, Jr. and Florence Anna Anderson without proper authority or any authority, and did thereafter exhibit or cause said deeds to be exhibited to opposing counsel for the purpose of obtaining an advantage for [his] client and for [himself] in the settlement of matters then pending." Petitioner was given five days in which to file his return, but none was filed. Hearings were resumed on March 4, 1952. Five hearings were held after the addition of Count Two. The local committee made findings of fact in accordance with charges contained in the notice to show cause except that in the finding on Count

Two it added the words "from Clyde N. Anderson, Jr.," after the words "without proper or any authority." No mention was made in the recommendation of the disciplinary proceedings then before this court on review. (*Coviello* v. *State Bar*, *supra*, 41 Cal.2d 273.)

On hearing before the Board of Governors, which included an appearance and oral argument by petitioner and his counsel and a motion by petitioner for a trial *de novo* or to reopen the case for further testimony, the board dismissed the first count; denied his motion, and made findings upon Count II in lieu of those of the trial committee. The portion of the findings of which petitioner seeks review are as follows:

### "II

"On or about July 10, 1952, respondent was engaged by Florence V. Anderson to represent her in a domestic relations matter with Clyde N. Anderson, Sr.

### "III

"Respondent on said date received possession of two deeds dated July 30, 1951, in each of which no grantee was named. While said deeds were in his possession the name of Florence V. Anderson was inserted as grantee in each deed. Respondent knew of such insertions at the time they were made or shortly thereafter. Thereafter respondent exhibited said deeds to Harold M. Davidson, counsel for Clyde N. Anderson, Sr., for the purpose of obtaining an advantage for respondent's client and himself in the settlement of matters then pending. Respondent did not disclose to Harold M. Davidson the facts regarding the invalidity of the deeds."

Petitioner contends that the "findings, conclusions and recommendations of the local committee, as approved by the Board of Governors, are not supported by the evidence," and asks that he be exonerated of the charges of unprofessional conduct. He also asks that the matter be reopened for the taking of further evidence.

It appears from the record that on July 10, 1952, petitioner was employed by Florence V. Anderson to clarify her marital status with Clyde N. Anderson, Sr. She agreed to pay petitioner one-half of any money or property obtained by her as her share of community property from Clyde N. Anderson, Sr., over and above $4,693, which amount she claimed to have advanced to Anderson, Sr., from her personal funds. The marriage of Florence V. Anderson and Anderson, Sr., was bigamous. The board dismissed Count I and

the finding of the trial committee thereon, obviously on the ground that the agreement in question was not, under the circumstances, promotive of divorce and therefore was not within the type of contingent fee agreements prohibited by the law of this state. (See *Krieger* v. *Bulpitt*, 40 Cal.2d 97 [251 P.2d 673].) The substituted finding made by the board, that petitioner was engaged to represent Florence V. Anderson in a domestic relations matter, is therefore not prejudicial to petitioner and forms no basis for the disciplinary measures recommended.

Prior to petitioner's employment by Florence V. Anderson he had represented Ruth W. Anderson (now Ruth Cain) in a divorce suit and quiet title action against Clyde N. Anderson, Sr. in which Ruth had sought a community interest in certain properties. Among these properties were three parcels of real property, as to which the record title stood in the name of C. N. Anderson, Jr., and Florence Anna Anderson, his wife, and an $8,000 trust deed of which a Mr Warner S. Stokes was the apparent owner. These persons were joined as parties defendant in the above-mentioned actions and the matters were consolidated for trial. Each of the defendants denied that Anderson, Sr., owned any interest in the properties. Judgment was rendered for defendants but a motion for a new trial was granted on October 19, 1951.

On August 29, 1951, Anderson, Sr., went to Mexico with Florence V. Day, with whom he had been cohabiting, and married her. They returned to Los Angeles and lived together as man and wife until June, 1952, when he became seriously ill and was hospitalized. It was during this period of hospitalization, when Anderson. Sr., was reportedly in a dying condition, that Florence separated from him and the negotiations hereinafter related took place.

When Florence V. Anderson employed petitioner on July 10, 1952, she turned over to him certain documents which tended to confirm his belief that Anderson, Sr., was the real owner of the assets which were in issue in the Ruth W. Anderson actions. There is no evidence that petitioner used this information for the purpose of extortion in pressing Ruth's demands for settlement. There is evidence that he used this information for the purpose of pressing Florence's demands for settlement and that in so doing he committed the acts set forth in Finding III of the board.

Among the documents handed to petitioner by Florence V.

Anderson were two blank deeds, signed and acknowledged by C. N. Anderson, Jr., and Florence Anna Anderson under date of July 30, 1951. Florence V. Anderson told petitioner that these properties belonged to Anderson, Sr., that he had given the deeds to her before they were married and had promised her that if she married him she could have her name inserted therein as grantee. During the absence of petitioner, Florence V. Anderson brought to his office a typewriter belonging to Anderson, Sr., and requested Mrs. Coviello, petitioner's wife and secretary, to type the words "Florence Vivion Anderson as her separate property" in the blank spaces for the grantee's name in these two deeds. She explained that she brought the typewriter with her because she wanted the deeds to appear regular so that they would be entitled to recordation. The question of Florence's authority to fill in the deeds is a collateral issue with which we are not here concerned. Petitioner was exonerated by the board as to any actual participation in the alteration of the deeds. It is not therefore necessary to discuss the evidence presented on this issue.

Immediately upon his employment by Florence V. Anderson to press her claims against Anderson, Sr., petitioner informed Harold M. Davidson, attorney for Anderson, Sr., of such employment. Prior negotiations for a settlement between these parties had been unsuccessful. Davidson testified that petitioner told him that Anderson, Sr., didn't own a thing and had deeded everything he owned to Florence V. Anderson. Davidson stated that he examined the deeds at petitioner's office and that at that time the deeds were complete and regular on their face; that he commented to petitioner on the fact that all the typing appeared to have been done on the same typewriter at the same time and had stated "It's funny Clyde denies to me that he ever gave Florence any deed." Petitioner, with knowledge of the alteration, exhibited the deeds to Davidson without disclosing to him that the deeds had been filled in or the circumstances under which the alterations were made. After several conferences between Davidson and petitioner, on August 8, 1952, Davidson prepared a property settlement agreement. Following further consultation between Davidson and petitioner, Davidson made some changes in the agreement on August 9th. Petitioner then gave the agreement to Florence V. Anderson for execution and advised her to sign it "without hesitation." Her signature thereto was acknowledged before petitioner as a

notary public on August 12, 1952. The agreement recited that the deeds were executed by Clyde N. Anderson, Jr., and his wife at the request and direction of Anderson, Sr., in favor of Florence V. Anderson ''as her sole and separate property.'' Neither Florence nor petitioner at that time called Davidson's attention to any falsity in these recitations. By their silence they indicated that the recitals in the agreement were true.

After executing the agreement Florence attempted to discharge petitioner as her attorney and to withdraw from her fee arrangement with him but she allowed him to represent her at a general meeting held on August 21, 1952, in the office of Davidson which was called for the purpose of settling the claims of herself and of Ruth Anderson Cain against Anderson, Sr. At that time Florence declared that the recitations in the agreement of August 8th were not true; that she had never told petitioner that she had authority to fill in her own name; that she had told petitioner that Anderson, Sr., had promised to have her name *and his* filled in after the settlement of Ruth's claims; and that when she first showed the blank deeds to petitioner he had exclaimed, ''I don't think you know what you have really got.'' She replied that the deeds didn't mean anything; that there was no name in them; and that he answered, ''Well, I'm working on something big. If you do just what I say we'll both come out of this ahead.''

Davidson testified that he had told everyone at the meeting on August 21st that in view of the facts brought out that evening he would have to consult again with his client before approving the consummation of the agreement. Davidson's testimony that he had gone out to the hospital the following day to see his client was objected to by petitioner and the subject was not pursued. This is important only because petitioner now seeks to augment the record to include an affidavit by Attorney Ralph A. Harper that he had called upon Anderson, Sr., at the hospital on August 21, 1952, and a photostatic copy of the pass showing the date of this visit. These are offered to impeach the testimony of Davidson that he had visited Anderson, Sr., on August 22d at which time some other attorney, whose name he did not recall was present. Had there been no successful objection interposed by petitioner any discrepancy in this regard might have been cleared up at the hearing. The affidavit and pass are also offered to corroborate petitioner's testimony that he had notified Davidson as to the alteration of the deeds and to

support his contention that the only logical reason that Anderson, Sr., had called in another attorney was because he had learned about the alterations in the deeds. The affidavit states that Harper had been asked by Anderson, Sr., to discuss with him "personal problems of a domestic nature"; that the latter had requested him to ascertain the whereabouts of a Mrs. Florence Anderson; and that on or about August 25, 1952, he had been advised that Anderson, Sr., did not wish any further action taken. The affidavit does not refer to the deeds or to the property settlement agreement, and does not show any relevancy to the issues before us. Furthermore, petitioner does not show that he could not have produced this affidavit and pass at the hearing or that he could not have subpoenaed Harper.

■ Also offered in augmentation of the record are documents pertaining to the Ruth W. Anderson actions. These are offered to show that those matters were pending on August 21st and to support petitioner's argument that it would have been to his interest to use the blank deeds to press the claims of his client Ruth. It is noted that petitioner had a contingent interest in half the recovery made on behalf of either client (with the exception above noted as to his contract with Florence V. Anderson and her money claim). The fact of the pendency of the Ruth actions does not rebut the evidence or the strong inferences from the evidence that petitioner attempted to deceive Davidson as to the validity of the deeds in negotiating the property settlement for Florence V. Anderson.

An affidavit of Ruth Anderson Cain is offered by Anderson relating to a conversation between Ruth and Florence after the latter had become dissatisfied with petitioner's services (a time obviously after August 9, 1952) with reference to the deeds. Objections to Mrs. Cain's testimony on this subject were sustained at the disciplinary hearings. The statement in the affidavit that in this conversation Florence had said she would cause her name to be filled in on two of the deeds is inconsistent with the testimony of petitioner and his wife as to the time when the deeds were filled in. Other statements irrelevant to the issues in this proceeding are contained in the affidavit.

■ The testimony of Britton Basore, a relative of Anderson, Sr., that in a conversation at the hospital between Davidson and Anderson, Sr., prior to August 21, 1952, he had heard that petitioner had some deeds that were "filled out"

and that Anderson, Sr., had denied giving Florence V. Anderson any deeds, is not inconsistent with Davidson's testimony that the deeds had been represented to him as completed deeds.

▉ Petitioner requests that Davidson and Anderson, Sr., be required to appear and answer pertinent questions as to their knowledge of the purpose of the execution of the blank deeds on July 30, 1951, and also concerning their knowledge prior to August 21, 1952, of the filling in of the deeds. The first expressed purpose is also irrelevant to the issue. As to the second, the evidence is sufficient to show that as of August 9th Davidson had not been informed by petitioner of the alteration in the deeds which had been exhibited to him, and that by such deliberate silence on the part of petitioner Davidson had been deceived.

Petitioner had ample opportunity to cross-examine Davidson and Basore at the hearings and to subpoena witnesses. One of the important issues was the date upon which petitioner had made a disclosure to Davidson of the facts about the alteration of the deeds. Petitioner's own testimony in this regard was vague and does not tend to establish any date prior to August 9th. ▉ He was under a duty to present to the local committee and to the board any evidence which he deemed favorable to himself. He may not neglect to do this and rightly demand in his petition for review either that such evidence should be considered by this court or that he is entitled to another hearing before the State Bar. (*Glover* v. *State Bar*, 13 Cal.2d 229, 232 [88 P.2d 922]; *Tapley* v. *State Bar*, 8 Cal.2d 167, 170 [64 P.2d 404]; *Shaeffer* v. *State Bar*, 220 Cal. 681, 687 [32 P.2d 140]; *Stafford* v. *State Bar*, 219 Cal. 415 [26 P.2d 833].) ▉ The board properly denied his motion for a trial *de novo* or to reopen the case for further testimony for lack of compliance with rule 39.1, Rules of Procedure, State Bar Rules.

There is no merit to petitioner's contention that he did not have reasonable notice of the charges against him contained in Count II.

The gravamen of the offense with which petitioner is charged is the intentional deceiving of opposing counsel. ▉ It is not necessary that actual harm result to merit disciplinary action where actual deception is intended and shown. (*Lady* v. *State Bar*, 28 Cal.2d 497, 504 [170 P.2d 460]; *Pickering* v. *State Bar*, 24 Cal.2d 141, 145 [148 P.2d 1].) ▉ It is not

therefore material that after full disclosure was made petitioner's client received the same settlement which had been negotiated for prior to disclosure. ■ Discipline has been imposed upon attorneys in misleading opposing counsel as to signatures on documents. (*Hallinan* v. *State Bar*, 33 Cal.2d 246 [200 P.2d 787]; *Allen* v. *State Bar*, 36 Cal.2d 683 [226 P.2d 569].) Such conduct falls short of the honesty and integrity required of an attorney at law in the performance of his professional duties. The evidence shows that petitioner dealt unfairly with opposing counsel in a dishonest manner, "manifestly not in accordance with good morals or honest dealings." (*Lantz* v. *State Bar*, 212 Cal. 213 [298 P. 497].)

The findings, conclusions and the recommendation of the Board of Governors are sufficiently supported by the evidence and are approved. The application to produce further evidence before this court or to remand the cause for further hearing before the board, is denied. The petitioner is suspended from the practice of law in this state for a period of six months commencing 30 days after the filing of this opinion.