[L. A. No. 28237. In Bank. Apr. 28, 1965.]

H. EDWARD SCOFIELD, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Harry B. Seelig for Petitioner.

F. LaMar Forshee for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of the State Bar of California that petitioner be suspended from the practice of law for six months.

 *Questions*: First. *Is the conclusion reasonably warranted that petitioner, in representing a husband and wife who suffered damages in two rear end automobile collisions a week apart, knowingly and wilfully asserted claims against the insured owner of the other car in each case for items of special damage resulting from both accidents combined?*

*Yes.* The burden is upon one seeking a review of a recommendation of the Board of Governors to show that its findings are not supported by the evidence or that its recommendation is erroneous or unlawful (*McKinney* v. *State Bar, ante,* pp. 194, 195 [2] [41 Cal.Rptr. 665, 397 P.2d 425]). The record discloses that petitioner has not sustained this burden.

 It appears from the record that petitioner was admitted to the practice of law in California June 4, 1957, and that he was practicing in Los Angeles County at the time of the events hereinafter set forth.

On February 7, 1960, the automobile in which Sam and Rose Agranowsky were riding was struck from the rear in Redlands, California, by an automobile driven by Harry E. Bergen.

On February 13, 1960, the same automobile, in which the same parties were riding, was again struck from the rear, in Los Angeles, this time by a truck owned and operated by Collins Mint Canyon Poultry Company (hereinafter called "Collins").

Some time between February 7 and February 13, 1960, the Agranowskys retained petitioner to prosecute their claims for personal injuries and property damage against Bergen and thereafter authorized him to represent them in their claim against Collins. In each instance, a contingent fee agreement was made.

After the first accident, petitioner referred the Agranowskys to Dr. H. George Blasdel, an eye specialist, for examination. Later, he requested that the doctor furnish him medical reports on his examinations.

Under date of February 15, 1960, petitioner wrote Bergen and asked him to have his insurance carrier contact petitioner. Under date of February 16, 1960, petitioner wrote a similar letter to Collins.

Government Employees Insurance Company was the carrier for Bergen; Brown Brothers was its adjuster. Hartford Fire Insurance Company (hereinafter called "Hartford") was the carrier for Collins and did its own adjusting.

At the instance of petitioner, the doctor submitted reports on his examination of each of the Agranowskys for the accident which occurred on February 7.

Also, at petitioner's request, he submitted reports on his examination of each of the Agranowskys for the accident which occurred on February 13.

In neither report did he make any reference to the fact that the Agranowskys had been involved in two accidents. On the contrary, the reports were written so as to indicate there had been but one accident.

On or about April 15, 1960, Donald F. George, a claims adjuster for Hartford, went to petitioner's office and discussed with him the Agranowskys' claim against Collins. During that meeting, George was given by petitioner the items of special damages sustained by the Agranowskys and the dollar amount of each item. George made notes in longhand of this information.

Under date of April 25, 1960, at the instance of Brown Brothers, petitioner sent them a letter itemizing the items of special damages sustained by the Agranowskys and the dollar amount of each item.

The special damages and the dollar amount of each item of which petitioner advised Brown Brothers and George were identical.

Petitioner sent to both Brown Brothers and Hartford copies of Dr. Blasdel's bills. Petitioner did not inform either Brown Brothers or Hartford that there had been two accidents. Further, he led each to believe that all the personal injuries and special damages of the Agranowskys had been sustained in the accident in which its insured had been involved.

Under date of July 29, 1960, there were sent from petitioner's office letters (which he disclaimed signing) to Hartford and Brown Brothers, with each of which was enclosed a copy of a letter dated July 25, 1960, from Gamm Construction Company to petitioner. The construction company's letter stated the wages Sam Agranowsky lost because of "the accident." Petitioner wrote in each letter, "I trust that this is the final hurdle to the settlement of this case. . . ."

On July 27, 1960, petitioner had a telephone conversation with Donald George of Hartford. During the conversation, George made the following notation in the Collins file: "On

July 27, '60 Scofield called, voice same, quoted Brown Brother file number.''

By his questioning at the hearings before the trial committee, in his argument to that committee, and in his brief before this court, counsel for petitioner has taken the position that petitioner in his telephone conversation informed George of the other accident. George's testimony as to the conversation is to the contrary.

George's testimony was that petitioner telephoned him about the Collins claim, and that, to save time, he asked petitioner for the file number of the claim, so that he might quickly obtain his file. George testified that petitioner inadvertently and by mistake gave him the Brown Brothers file number; that petitioner did not mention Brown Brothers by name, but George recognized that it was a Brown Brothers file number; and that petitioner then corrected himself and gave George the Hartford number. George made no comment to petitioner about the slip.

As a matter of fact, both insurance companies and Brown Brothers had known for some time of the two claims through information from the Los Angeles Index Bureau, an agency maintained by casualty companies to exchange such information.

Neither Brown Brothers nor Hartford settled with petitioner as a result of his initial attempts at settlement.

On May 17, 1960, petitioner filed suit against Bergen. In an unverified complaint, petitioner alleged that plaintiffs' property damage to their automobile was $253.62.

On October 19, 1960, Gary W. Sawtelle, pursuant to the request of petitioner, prepared and filed a complaint against Collins. In that complaint, also unverified, Sawtelle alleged that the property damage to plaintiffs' automobile was $253.62. Sawtelle took this information from the file petitioner sent him.

Subsequently, petitioner turned over to Sawtelle for handling a number of personal injury claim files, including that in the case of *Agranowsky* v. *Bergen*. Sawtelle testified that he thereupon discovered the duplication of the property damage claim in the two complaints, called it to petitioner's attention in December 1960 or January 1961, and told petitioner he would straighten it out with counsel for the defendants.

Mr. Donald K. Black, of Betts and Loomis, counsel for Collins, testified that in their depositions taken on June 14, 1961, plaintiffs stated they had been involved in two accidents. He further testified that prior to that date neither Sawtelle

nor petitioner had told him that plaintiffs had been in two accidents. Counsel for Collins also denied any recollection that Sawtelle had informed him.

There is no evidence that at any time between his conversation with Sawtelle in December 1960 or January 1961 and the Agranowskys' disclosures in the depositions of June 14, 1961, petitioner himself ever made any disclaimer of the duplications in the complaints.

Both suits were ultimately settled.

By combining special damages arising from both accidents in separate claims against each defendant, petitioner employed untruthful means on behalf of his clients, contrary to his duty as an attorney. It thus appears that petitioner knowingly duplicated items of special damage in the claims or knowingly allowed duplicate items to remain in them.

■ Affirmative representations made with intent to deceive are grounds for discipline, even though no harm results. (*Coviello* v. *State Bar,* 45 Cal.2d 57, 65 [7] [286 P.2d 357]; *Hallinan* v. *State Bar,* 33 Cal.2d 246, 249 [200 P.2d 787]; *Pickering* v. *State Bar,* 24 Cal.2d 141, 144-145 [148 P.2d 1].)

The suppression of that which is true, by one having knowledge or belief of the fact, to deceive another, or to induce him to enter into a contract, constitutes actual fraud. (Civ. Code, § 1572, subd. 3.)

It is the duty of an attorney to employ, for the purpose of maintaining the causes confided to him, only such means as are consistent with the truth. (Bus. & Prof. Code, § 6068, subd. (d).)

■ Second. *What should the discipline be under the circumstances?*

The record supports culpability on the part of petitioner, and the offense is a serious one.

Section 556 of the Insurance Code makes it a criminal offense to present a fraudulent claim for the payment of a loss under a contract of insurance. That section reads, as follows: "It is unlawful to: (a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance. (b) Prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim. Every person who violates any provision of this section is punishable by imprisonment in the State prison not exceeding three years, or by fine not exceeding one thousand dollars, or by both."

Section 556 of the Insurance Code extends to acts of an attorney in knowingly presenting, on behalf of a client, a

fraudulent claim for the payment of a loss under a contract of insurance. (*People* v. *Benson,* 206 Cal.App.2d 519, 532-534 [11] [23 Cal.Rptr. 908].)

Petitioner alleges that at the time of the second accident his clients had not obtained an estimate of the cost of repairing the damage sustained in the first accident; that when the cost of repairing the total damage was obtained, he was unable to determine how much should be attributed to each accident; and that for this reason he decided to submit claims for the full amount thereof to both Brown Brothers and Hartford. He then apparently felt impelled to submit to both Brown Brothers and Hartford claims for the entire amount of the wages lost by Mr. Agranowsky because of his injuries.

It appears from the record that petitioner failed to meet the high standards demanded of members of the legal profession. His conduct in the instant case was reprehensible, and he should be disciplined therefor. However, under the circumstances of this case, it would appear that a suspension for 30 days is adequate.

It is ordered that petitioner be suspended from the practice of law for a period of 30 days, the order to become effective 30 days after the filing of this opinion.