[L.A. No. 31460. Mar. 1, 1982.]

GERALD G. GARLOW, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Weitzman, Fidler & Re and Howard L. Weitzman for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

OPINION

**THE COURT.**—We review a State Bar recommendation that petitioner, Gerald G. Garlow (admitted to the practice of law in California in 1965), be suspended from the practice of law for a period of one year and that the suspension be stayed upon specific conditions, including probation for one year with six months' actual suspension.

The only issue is the appropriate degree of discipline. Petitioner does not contest the findings or recommendations of the hearing panel of the State Bar which recommended 90 days' actual suspension. Following a review requested by petitioner, however, the State Bar, while affirming the findings of the hearing panel, increased to six months the recommended actual suspension.

Petitioner argues that six months' actual suspension is excessive, and that the hearing panel's original recommendation is sufficient to protect the public. We disagree and approve the State Bar's ultimate recommendation.

## FACTS

Petitioner represented Garnet B. Stevens III in a dispute involving a lease and proposed sale of real property and the resulting litigation which included entry of a default judgment against Stevens. On August 15, 1977, petitioner filed a motion to set aside the default judgment on the ground that Stevens had never been properly served with the summons and complaint. In support of this motion petitioner filed certain declarations under penalty of perjury which were purportedly signed by Stevens, his former wife Lois, and his son Garnet B. Stevens IV.

On August 30, 1977, petitioner appeared in court to argue the motion to set aside the default judgment. At this time the opposing party moved to strike the supporting declarations on the ground that they were not signed by the named declarants. A handwriting expert of unchallenged qualifications testified that *none* of the signatures on the declarations was genuine, and that, in his opinion, all the declarations had been signed by the same person.

At the hearing, petitioner offered to stipulate that he had signed the declaration for Lois Stevens, but said there were good reasons for doing so. Lois Stevens had given him a general power of attorney because she was unable to sign for herself, having received injections in her arm on that day. He represented that he signed the declaration in her presence and at her request, but did not admit signing the other declarations. Rather, he contended that after the documents were prepared he asked his secretary to collect the remaining signatures.

Petitioner had arranged for Stevens, his wife and his son, to be present at the default hearing. During a court recess and after his opponent's handwriting expert had testified, petitioner showed Stevens the declaration purporting to bear his signature and directed Stevens to testify that the signature was his own. Stevens refused to so testify on the ground that he had not signed the instrument. Petitioner advised Stevens that if he did not so testify, the motion for relief from default would be denied. Stevens, nonetheless, declined and left the courthouse because of illness and because he would not falsely testify that the signature on the declaration was his own.

After the recess, petitioner requested a continuance of the hearing, representing to the court that Stevens would testify that the signature

was genuine, and further that he had no prior notice that the opposing party would present a handwriting expert. (At the disciplinary hearing, petitioner admitted that opposing counsel had told him the day before the hearing that an expert would be called.) When the continuance was not granted, petitioner called Lois Stevens to the stand to testify (at his request) to the authenticity of Garnet Stevens' signature on the declaration, this despite the fact that Stevens had previously told petitioner that he had not signed the document.

The hearing panel found that petitioner wrongfully signed each of the declarations of his clients filed in support of his motion to set aside the default judgment. The panel also found that petitioner wilfully misrepresented to the court the authenticity of the purported declarations. The panel concluded that such conduct violated petitioner's oath and duties as an attorney within the meaning of sections 6067, 6068 and 6103 of the Business and Professions Code. The panel also found that petitioner wilfully violated rule 7-105 of the Rules of Professional Conduct of the State Bar.

## DISCUSSION

On review petitioner bears the burden of showing that the recommendation of the State Bar should not be followed. (*In re Arnoff* (1978) 22 Cal.3d 740, 747 [150 Cal.Rptr. 479, 586 P.2d 960].) In defense of his position that he should receive the lesser sanction, petitioner primarily relies on the "great weight" to which, he urges, a hearing panel's findings are entitled in light of the panel's familiarity with the testimony and evidence. (*Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 712-713 [108 Cal.Rptr. 821, 511 P.2d 1173].) ▮ Yet, our established rule is that while the hearing panel's *factual findings* may be entitled to greater deference than the board's own findings, "it is the Board's recommendation in matters of the *discipline* to be imposed which is to be accorded the greater weight." (*Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35], italics in original.) The ultimate decision, of course, remains with us.

Petitioner further argues that the primary purpose of disciplinary proceedings is not to impose punitive sanctions but to assess petitioner's fitness to continue as an attorney. Petitioner asserts that a 90-day suspension is sufficient to teach him a necessary lesson.

■ Petitioner describes his conduct as a failure to exercise "good judgment." In arguing for the 90 days' actual suspension, petitioner's counsel notes that petitioner did not intend to harm his clients or to steal or misappropriate money, and his client Stevens suffered no out-of-pocket loss from petitioner's misconduct. Petitioner further observes that during the period involved here he had both a law office and legal clinic; that the clinic was not intended to be a lucrative venture, but was established to provide legal services for low fees to a predominantly Hispanic community; and that in a desire to improve his law practice, he has closed the legal clinic thereby conserving much of his time and energy.

■ The well established purposes of these proceedings are not punitive but are to (1) protect the public, (2) maintain the integrity and the high professional standards of the legal profession, and (3) preserve public confidence in the legal profession. (*Bradpiece v. State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].) Varying degrees of discipline have been imposed in the past on attorneys who have misled the court or an opposing party, by signing another person's name to a document. (E.g., *Hallinan v. State Bar* (1948) 33 Cal.2d 246 [200 P.2d 787]; *Paine v. State Bar* (1939) 14 Cal.2d 150 [93 P.2d 103].) In *Paine*, the attorney was charged with making false allegations in a petition to the probate court. ■ There, as here, the attorney did not benefit from the action and no one suffered any monetary injury. In suspending the attorney for six months, we affirmed that "'[h]onesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense.'" (*Id.*, at p. 154.) Furthermore, we have noted that it is not necessary that actual harm has resulted to warrant disciplinary action where actual deception is intended and shown. (*Coviello v. State Bar* (1955) 45 Cal.2d 57, 65 [286 P.2d 357].)

We cannot ignore the central fact that petitioner here not only signed documents for others under penalty of perjury but asserted their genuineness before a court and urged his client to give false testimony. These acts are most serious violations and cannot be condoned. In *Barreiro v. State Bar* (1970) 2 Cal.3d 912 [88 Cal.Rptr. 192, 471 P.2d 992], for example, we observed that "Knowingly giving false testimony on a material factual issue is a serious breach of basic standards of honesty as well as a violation of an attorney's oath of office and his duties as an attorney. Affirmative representations made with intent to deceive,

even though no harm results, are grounds for discipline." (*Id.*, at p. 926; see also *Scofield* v. *State Bar* (1965) 62 Cal.2d 624, 628 [43 Cal.Rptr. 825, 401 P.2d 217].)

We give consideration to an attorney's prior record in determining the appropriate degree of discipline. (*Schullman* v. *State Bar* (1976) 16 Cal.3d 631, 635 [128 Cal.Rptr. 671, 547 P.2d 447].) Petitioner has a past disciplinary record which includes three separate offenses and which was considered by the hearing panel and the board. In 1976 and 1978 he received private reprovals and in 1980 a public reproval. The private reprovals resulted from instances in which petitioner accepted monies from clients to pursue some legal action but wilfully failed to perform the services for which he was retained. The public reproval followed petitioner's wilful representation to a court that a notice of appeal from a penal conviction had been executed by the client, and that the client was representing herself in propria persona when he knew that she was not. The appeal, which petitioner had been retained to pursue, was eventually dismissed for failure to prosecute with diligence. Petitioner also failed to file a timely appeal for the client's codefendant. In the disciplinary proceedings resulting from these actions, the hearing panel found that petitioner had wilfully failed to perform all of the services for which he was retained. The discipline then imposed was fully justified by his deceptive mishandling of these appeals.

Petitioner has now been found guilty of new and even more serious violations of the Business and Professions Code and the Rules of Professional Conduct. He has not challenged any of the board's findings, including the findings that he wilfully and knowingly misrepresented to the court and opposing counsel the authenticity of documents prepared under penalty of perjury. Petitioner's present and past dishonesty demonstrates an habitual lack of appreciation and respect for his duties and responsibilities as an attorney and officer of the court. Our concern necessarily lies in protecting the public's right to representation by attorneys who are worthy of trust and who fulfill the professional standards required of them. Petitioner has wholly failed to show that the recommended discipline was unwarranted. In our view, under the circumstances it is minimal.

It is hereby ordered that petitioner be suspended from the practice of law for a period of one year; that execution of the order for such suspension be stayed; and that petitioner be placed upon probation for the one-year period on conditions that he be actually suspended from the

practice of law for the first six months of such period of probation and that he comply with those additional conditions of probation set forth in the disciplinary board's recommended order.

This order is effective 90 days after the filing of this opinion.