[L.A. No. 31968. May 13, 1985.]

In re LLOYD L. VAUGHN on Disbarment.

COUNSEL

William I. Goldstein for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

OPINION

THE COURT.—In this proceeding we review and accept the recommendation of the review department of the State Bar that petitioner, Lloyd L. Vaughn, be disbarred for grand theft and other misconduct.

1. FACTS

Petitioner was admitted to the practice of law in California on June 26, 1970, and has no record of prior discipline. In March 1981, he pleaded nolo contendere and was convicted of grand theft (Pen. Code, § 487, subd. 1), a crime necessarily involving moral turpitude (see Bus. & Prof. Code, § 6101), and thus was placed on interim suspension by this court in April 1981 (id., § 6102, subd. (a)). We referred the matter to the State Bar on the issue of discipline. Comprehensive written stipulations were executed

regarding the facts of the offense and mitigating circumstances. The hearing panel recommended a five-year probationary suspension, including a four-year actual suspension. The review department adopted the findings of fact of the hearing panel, but recommended disbarment as the appropriate discipline. Petitioner argues that disbarment is too severe in light of the mitigating circumstances.

The conviction arose out of petitioner's misappropriation of $102,250 from his clients, entertainment personalities Robert and Patricia C, over a two-year period. The Cs retained petitioner in 1975 as both their attorney and business manager. He continued in these capacities for the Cs until they separated in December 1977; thereafter he similarly represented Robert until his death in June 1978. Petitioner received a general power of attorney from the Cs to perform duties necessary to manage their business affairs.

The Cs maintained three separate business bank accounts, each account requiring that checks drawn upon it be signed by two of the following: Robert C, Patricia C, and petitioner. The Cs were frequently absent from home due to Robert's television performance schedule; accordingly, they often left signed, blank checks with petitioner, who maintained custody of their financial records. These checks were intended to allow petitioner to conduct the Cs' affairs during their frequent absences.

From December 1975 through November 1977, petitioner withdrew a total of $92,250 from the Cs' business accounts. All of these funds were converted to his own use. The withdrawals were designated as "loans" to petitioner, and most were accompanied by an "I.O.U." placed in the Cs' financial records. Petitioner accomplished these misappropriations by issuing checks to himself or his law partnership and signing both his own and Robert's name to these checks. Petitioner was never authorized either to make any of the "loans" to himself or to sign Robert's name to the checks. Certain that his conduct would be discovered, petitioner informed Robert of the "loans" sometime in December 1977, the month in which the Cs separated.

Petitioner also drew a $10,000 check upon the Cs' business account without their prior approval. This check was payable to a business enterprise in which petitioner then had an economic interest. The business later repaid the $10,000 to petitioner who, instead of returning these funds to the Cs' accounts, converted them to his own use.

As indicated above, Robert died in June 1978. Petitioner's unauthorized conduct was discovered by the attorney for Robert's estate, Lee Blackman, after lengthy investigations in which petitioner failed to cooperate. Later,

petitioner made partial restitution of $75,000, and Blackman was assured that further restitution was forthcoming. When none materialized, however, Blackman informed the authorities of the misuse of the Cs' funds. During questioning by an investigator, petitioner represented that the "loans" were made with Robert's consent. This same representation was again repeated to the investigator four months later.

Petitioner was convicted of grand theft in March 1981, and a probation and sentencing hearing was set for July of that year. In April, as part of a probation department's investigation, petitioner represented to a narcotics evaluator that he had ceased using all drugs except marijuana. In May 1981, petitioner sent a letter to the court requesting probation in which he stated his drug problem was "under complete control."

Petitioner, Patricia C and a deputy district attorney eventually entered into an agreement providing that she would dismiss her civil suit for recovery of misappropriated funds, thereby removing a lien from petitioner's house and allowing refinancing. Petitioner agreed to make partial restitution of $10,000 to Patricia before the July hearing in return for the dismissal. The house was refinanced, yielding $21,000. Petitioner paid $3,000 to Patricia, but converted the remainder to his own use, primarily for the purchase of cocaine. He deliberately misrepresented to his attorneys that he had paid the full $10,000 to Patricia, knowing they would report the supposed payment to the court and the deputy district attorney.

Petitioner was sentenced to state prison for three years. The sentence was suspended, and he was placed on formal probation for five years on conditions including one year in the county jail and complete restitution of approximately $34,000.

After petitioner's conviction for grand theft on March 27, 1981, we ordered him suspended from the practice of law until further order. (Bus. & Prof. Code, § 6102.) We referred the matter to the State Bar for hearing, report, and recommendation as to discipline.

The State Bar stipulated that petitioner has demonstrated complete candor and remorse during the disciplinary proceedings, and that he has no prior record of discipline. Petitioner also offers the following circumstances in mitigation of his conduct, each of which was found to be true by the State Bar: (1) his drug dependency from 1975 until mid-1981, resulting in severe financial problems, the diminution of his law practice, severe psychological problems (including his diagnosis as a manic-depressive), the breakup of his 14-year marriage, and the loss of his house through foreclosure; (2) his designation of his withdrawals of the Cs' funds as "loans" in the check

registers and ledgers; (3) his admission to Robert of his misuse of the funds; (4) his repayment of $75,000 (the amount in excess of fees petitioner would have been entitled to if he had properly performed his duties); (5) his use of almost all funds (except the $10,000 check to the business enterprise) to finance his drug addiction; (6) his present participation in a drug abuse program, attendance at Alcoholics Anonymous meetings, and work at Alcoholics Anonymous Central; and (7) the testimony of petitioner's doctor and primary therapist regarding his treatment, involvement with other patients, drug abuse, attempted suicide, subsequent treatment, and current good prognosis for recovery (notwithstanding a 70-80 percent recidivism rate among individuals in similar drug abuse programs).

## 2. DISCUSSION

The hearing panel recommended that petitioner be suspended for five years (a four-year actual suspension and one year of probation). The review department, however, recommended disbarment by a vote of eight to two.

■ Although we must make the final determination on matters of attorney discipline, the State Bar's ultimate recommendation is given great weight. (*In re Distefano* (1975) 13 Cal.3d 476, 480 [119 Cal.Rptr. 105, 531 P.2d 417].) ■ The burden is on petitioner to show that the recommendation is erroneous or unlawful. (*In re Lyons* (1975) 15 Cal.3d 322, 325 [124 Cal.Rptr. 171, 540 P.2d 11].) ■ Moreover, although the hearing panel recommended only a five-year probationary suspension, the review department's determination as to the degree of discipline is entitled to greater weight than that of the hearing panel. (*Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 131 [192 Cal.Rptr. 866, 665 P.2d 956]; *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106]; *Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].) In the present case, the review department stated that its disbarment recommendation was based on the inadequacy of a mere suspension "in view of the seriousness of [petitioner's] offense . . . aggravated by his deceit during the criminal investigation of his misconduct."

Petitioner does not contest the seriousness of his conduct or the fact of his subsequent deceit, but contends that his "cocaine dependency and manic-depressive psychological condition" mitigate the degree of his culpability. He also contends that moral turpitude is lacking because of his mental and physical condition, and "because of the added element of paranoia . . . possibly rendering [him] so impaired as to be temporarily not responsible for his own behavior . . . ."

Petitioner does not contest any of the facts outlined in the stipulation; he only challenges the disbarment recommendation. ■ We have often stat-

ed that in the absence of strong mitigating circumstances the penalty for repeated acts of misappropriation, or misappropriation coupled with misrepresentation, is disbarment. (*Rimel* v. *State Bar, supra,* 34 Cal.3d 128, 132 [misappropriation]; *In re Lyons, supra,* 15 Cal.3d 322, 326 [same]; *McKinney* v. *State Bar* (1964) 62 Cal.2d 194, 197 [41 Cal.Rptr. 665, 397 P.2d 425] [misappropriation and misrepresentation].) Here, petitioner converted his clients' money to his own use in repeated instances over a period of years.

Petitioner proffers his manic-depressive psychological condition and cocaine habit as mitigating circumstances. Drug dependency is a very serious social and personal problem, and while petitioner cites no authority in support of his position, our independent research has unearthed some cases in which we have dealt with the subject.

Initially, we note that petitioner is not exonerated merely because his misconduct was partly related to his psychosis. (*In re Abbott* (1977) 19 Cal.3d 249, 254 [137 Cal.Rptr. 195, 561 P.2d 285]; *In re Duggan* (1976) 17 Cal.3d 416, 423-424 [130 Cal.Rptr. 715, 551 P.2d 19].) Psychoneurotic problems are not a mitigating factor in bar disciplinary proceedings, where the goal is protection of the public. (*Snyder* v. *State Bar* (1976) 18 Cal.3d 286, 293 [133 Cal.Rptr. 864, 555 P.2d 1104].) While such problems may explain misdeeds, they do not excuse them. (*Ibid.*)

In *Tenner* v. *State Bar* (1980) 28 Cal.3d 202 [168 Cal.Rptr. 333, 617 P.2d 486], we followed the recommendation of the State Bar that an attorney be suspended from the practice of law for two years, such suspension to be stayed during a probationary period, subject to rigorous conditions. In that case, although the attorney successfully relied on his alcoholism as a mitigating factor, there was no evidence indicating that he was guilty of misconduct *after* seeking rehabilitative treatment. The present case is distinguishable from *Tenner.* Here, petitioner spent at least $19,000 on cocaine, and breached a partial restitution agreement, only a few months after assuring the court his drug problem was "under complete control" and after representing to a narcotics evaluator that he then used only marijuana. We do not doubt petitioner's sincerity when he made these representations, but we have little reason to credit his current assurances in light of (1) his prior return to a cocaine habit, (2) his misrepresentations during both the criminal investigation of his misdeeds and his probation and sentencing hearing, and (3) his breach of the restitution agreement with Patricia C.

In *Tarver* v. *State Bar* (1984) 37 Cal.3d 122 [207 Cal.Rptr. 302, 688 P.2d 911], we followed the recommendation of the State Bar that an attorney who had commingled and misappropriated funds on three occasions

should be disbarred even though he had been addicted to alcohol. We were not insensitive to the problems of drug or alcohol abuse, but noted that the protection of the public is paramount. (*Tarver, supra,* 37 Cal.3d at p. 133.) The same consideration warrants our acceptance of the State Bar's recommendation in the present case. As indicated, one of our primary purposes in disciplinary proceedings is to protect the public. (*Ibid.*) Petitioner's doctor gave testimony that drug abuse programs similar to the one in which petitioner is enrolled experience a 70 to 80 percent rate of return to drug abuse. We cannot ask the public to bear the risk that petitioner will engage in misconduct subject to discipline as a result of the high probability that he will be unable permanently to rid himself of his narcotics problem.

While we applaud petitioner's attempt to rid himself of chemical dependency, the best evidence that he has become fit to practice law again is exemplary conduct over a substantial period. (*In re Petty* (1981) 29 Cal.3d 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191].) This evidence of rehabilitation is best shown at a reinstatement hearing held at the appropriate time following disbarment. (*In re Trebilcock* (1981) 30 Cal.3d 312, 315-316 [178 Cal.Rptr. 630, 636 P.2d 594].)

We therefore adopt the recommendation of the review department and order Lloyd L. Vaughn disbarred from the practice of law in California, and his name stricken from the role of attorneys. We need not order compliance with rule 955 of the California Rules of Court, because petitioner complied with that rule when we placed him on interim suspension after his conviction for grand theft. (See *Tarver, supra,* 37 Cal.3d 122, 135, fn. 4.) This order is effective 30 days after the filing of this opinion.