[S.F. No. 25116. May 23, 1988.]

DENNIS B. NATALI, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

458

COUNSEL

Edward S. Levinson for Petitioner.

Herbert M. Rosenthal, Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi, Sherrie McLetchie and Donald Steedman for Respondent.

OPINION

THE COURT.*—We have consolidated two separate State Bar disciplinary proceedings involving Dennis B. Natali.[1] In the first proceeding (the Hughes proceeding) the Review Department of the State Bar Court adopted the findings of the hearing panel that Natali made false representations to his client, failed to perform services for which he was retained, and abandoned the interests of his client. The review department recommends actual suspension of 90 days and compliance with rule 955 of the California Rules of Court.

In the second disciplinary proceeding (the Berro proceeding) the review department determined that Natali withdrew from employment without taking reasonable steps to avoid foreseeable prejudice to his client's rights, failed to perform legal services competently, and wilfully violated a court order. The review department recommends disbarment in the Berro proceeding if *any* discipline is imposed in the Hughes proceeding, or in the alternative, suspension for one year if we do not impose discipline in the

---

* Before Lucas, C. J., Broussard J., Panelli, J., Arguelles, J., Eagleson, J., Kaufman, J., and Racanelli (John T.), J.†

[1] Natali, who was admitted to the bar in 1967, is a sole practitioner. He generally employs one other attorney, although at times he has employed more than one. His support staff consists of two secretaries, two in-house bookkeepers, a law clerk, and a receptionist.

† Associate Justice, Court of Appeal, First Appellate District, Division One, assigned by the Chairperson of the Judicial Council.

Hughes proceeding. We conclude that discipline is warranted in both the Hughes and Berro proceedings, but we do not agree with the recommendation of the review department that disbarment is appropriate under these facts. We conclude that Natali should receive five years' suspension, stayed, with five years' probation subject to three years of actual suspension and compliance with rule 955 of the California Rules of Court.

## I. *The Hughes Proceeding.*

### A. *Findings of Fact.*

■ The record supports the review department's findings that Natali made false representations to his client, failed to perform services for his client, and abandoned his client.

In August 1979 Ivy Hughes retained Natali to represent her in a personal injury action. Natali filed a lawsuit on behalf of Hughes and another client named Arthur Wiltz. Two and one-half years later, Natali sent Hughes a letter dated February 15, 1982, advising her that he was "in the process of serving defendants[,] . . . engaging in discovery[,] and proceeding to trial. . . ." This statement was false. At the time Natali wrote the letter he was not in the process of serving defendants, nor was he engaging in formal discovery.[2]

From February 1982 until July 1983, the only legal work Natali did in the Hughes case was to write one letter to a claims adjuster. On July 5, 1983, the State Bar informed Natali that Hughes had lodged a complaint against him. The State Bar advised Natali that the limitations period for serving the defendant in the Hughes action would expire August 6, 1983. Natali subsequently made a concerted and costly effort to effect service, but was unable to serve the defendant until August 8, 1983, two days after the limitations period had run. The defendant filed a motion to dismiss, arguing that he had at all times been amenable to service and that plaintiff had not attempted to serve him until after the three-year limitations period had run. Natali did not oppose the motion to dismiss and the trial court granted it on May 17, 1984.

### B. *Conclusions of the Review Department.*

The review department concluded that Natali violated his oath and duties as an attorney at law, abandoned his client, failed to use reasonable

---

[2] The hearing panel determined that when Natali said he was "engaging in discovery," he meant that he was engaging in "informal" discovery and did not intend to deceive his client. Prior to December 2, 1981, this informal discovery consisted of correspondence with potential witnesses, medical purveyors, and the claims adjuster for defendants' insurance carrier.

diligence in serving his client, and effectively withdrew from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client. Specifically, the review department determined that Natali violated the provisions of sections 6067[3] and 6103[4] of the Business and Professions Code and rules 2-111(A)(1),[5] 2-111(A)(2),[6] and 6-101(A)(2)[7] of the Rules of Professional Conduct.[8]

For the misconduct charged in this proceeding, the review department by a vote of six to four increased the degree of discipline recommended by the hearing panel from seventy-five to ninety days actual suspension and included as a term of probation that Natali comply with the provisions of rule 955, California Rules of Court.

## C. Discussion.

### 1. Standard of Review.

Natali bears the burden of showing that the recommendation of the State Bar should not be followed. (*In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651]; *Garlow v. State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106].) Although we make an independent determination of the facts and the discipline to be imposed (*Galardi v. State Bar* (1987) 43 Cal.3d 683, 689 [238 Cal.Rptr. 774, 739 P.2d 134]; *Alberton v. State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177]), we nevertheless accord great weight to the findings and conclusions of the State Bar Court (*Guzzetta v. State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1]; *In re Kreamer* (1975) 14

[3] Section 6067 provides in relevant part: "Every person on his admission shall take an oath to support the Constitution of the United States and the Constitution of the State of California, and faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability."

[4] Section 6103 provides: "A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

[5] Rule 2-111(A)(1) provides: "If permission for withdrawal from employment is required by the rules of a tribunal, a member of the State Bar shall not withdraw from employment in a proceeding before that tribunal without its permission."

[6] Rule 2-111(A)(2) provides: "In any event, a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

[7] Rule 6-101(A)(2) provides: "A member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

[8] Further references to rules are to the Rules of Professional Conduct unless otherwise indicated.

Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]). As we discuss below, Natali has not met his requisite burden of proof.

### 2. *Natali's Contentions.*

Natali does not dispute the findings of fact and conclusions of law adopted by the review department. Admitting that his conduct was negligent, he puts forth two arguments.

■ Natali first contends that his failure to timely serve the Hughes complaint is excused because he discovered that Hughes was about to perpetrate a fraud. He therefore claims that by refusing to pursue the case, he "applied the highest standards of the legal profession. . . ." Natali's contention is absurd. The allegation of fraud is based on the testimony of Arthur Reddic, Jr. (a.k.a. Arthur Wiltz) that Hughes was not injured in the accident that resulted in her personal injury claim. The hearing panel referee found Reddic incompetent to testify about Hughes's injuries, and we agree. Moreover, Natali's contention is rendered completely frivolous by his subsequent admission that he did not discover the alleged fraud until *after* Hughes's lawsuit was dismissed.

■ In his second contention, Natali urges this court to impose the lesser sanction of 75 days suspension recommended by the hearing panel rather than the 90-day suspension recommended by the review department. Natali asserts that the hearing panel recommendation is entitled to greater weight than the recommendation of the review department because the hearing panel was more familiar with the testimony and evidence. However, "our established rule is that while the hearing panel's *factual findings* may be entitled to greater deference than the [review department's] own findings, 'it is the [review department's] recommendation in matters of the *discipline* to be imposed which is to be accorded the greater weight.' [Citation.]" (*Garlow v. State Bar, supra*, 30 Cal.3d at p. 916, italics in original.) Natali has failed to show why the review department's recommendation is an improper discipline for the type of misconduct involved in this proceeding. We therefore conclude that the 90-day suspension recommended by the review department is warranted.

## II. *The Berro Proceeding.*

### A. *Findings of Fact.*

■ The evidence supports the review department's findings that Natali withdrew from employment before taking reasonable steps to avoid foresee-

able prejudice to his client's interests, failed to perform legal services competently, and wilfully violated a court order.

In January 1984 Eleni Berro retained Natali to represent her in a marriage dissolution proceeding that had been initiated by another attorney. Trial of the Berro matter was set for February 23, 1984, the same date that Natali had two other matters set for hearing in other counties. Natali first became aware of the calendar conflict on February 14, nine days before trial. Opposing counsel Arthur Andreas informed Natali that the trial date could only be continued by court order and that such an order was unlikely. Nevertheless, Andreas indicated that he would not be opposed to taking the matter off calendar if he could be assured of a trial date within 45 days. Natali did not notify the court of the conflict, nor did he request a continuance prior to the scheduled trial date.

On the eve of trial, Andreas and Natali agreed to enter into a stipulation for bifurcation of certain portions of the dissolution. The parties also agreed to stipulate to a continuance of the dissolution. Natali was to draft and deliver the stipulation to Andreas before the close of business that day, but he delivered the stipulation after Andreas had left his office. Moreover, Natali did not appear for trial the next day. Andreas appeared and the matter was continued to March 2, 1984.

On March 2, Natali, Berro, and Andreas appeared in court. The judge took the matter off calendar at Natali's request and ordered Natali to file an at-issue memorandum on or before March 5, 1984. The judge also ordered Natali to pay $300 in sanctions, which was not to be charged to Berro. The court warned that the new trial date, when set, would not be extended "absent some extreme showing of good cause."

Immediately following the hearing, in direct violation of the court order, Natali demanded payment of $300 from Berro before Natali would proceed further. Moreover, Natali did not file an at-issue memorandum by March 5, 1984, in further violation of the order.

On March 19, Natali finally filed an at-issue memorandum. Both the memorandum and its cover letter were dated March 5, 1984. Although Natali blamed the delay on the postal service, the review department found that Natali prepared the memorandum and letter at a later date and backdated them to March 5th.

The Berro matter was set for trial on May 17, 1984, and notice of trial-setting was mailed by the court clerk's office to both Andreas and Natali.

Natali and his secretary testified that they did not receive the notice. However, the hearing panel determined notice *was* received by Natali's office.[9]

Neither Natali nor Berro appeared for trial on May 17, and the court entered an interlocutory decree of dissolution by default, adopting the financial proposals put forward by Andreas on behalf of his client. The financial arrangements appear to be fair to Berro.

Upon learning of the entry of the default judgment, Berro discharged Natali and retained Ann Van Balen. Van Balen filed a motion to set aside the default judgment, which was denied.

### B. *Conclusions of the Review Department.*

The review department concluded that Natali violated rule 2-111(A)(2) by withdrawing from employment before taking reasonable steps to avoid foreseeable prejudice to his client's rights. Moreover, the review department determined that Natali failed to perform legal services competently in violation of rule 6-101(A)(2) and wilfully violated a court order in violation of Business and Professions Code sections 6068, subdivision (a),[10] and 6103.

The review department unanimously recommends that Natali be disbarred from the practice of law if any discipline is imposed in the Hughes proceeding, or in the alternative, that Natali be suspended from the practice of law for four years, stayed, with one year of actual suspension if we do not impose discipline in the Hughes proceeding.

### C. *Discussion.*

#### 1. *Natali's Contentions.*

Natali argues that because the superior court denied Van Balen's motion to set aside the interlocutory default judgment entered against Berro, the superior court necessarily made a determination that Natali had not been negligent in his representation. Therefore, he contends that it was error for the State Bar to find that he violated rules 2-111(A)(2) and 6-101(A)(2). Natali cites *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380 [38 Cal.Rptr. 693] and *Vartanian* v. *Croll* (1953) 117 Cal.App.2d 639 [256 P.2d 1022] for the proposition that if gross neglect exists, the trial court is

---

[9]The hearing panel based this finding on the testimony of the attorney who took over the Berro dissolution after Natali was discharged. The attorney testified that she found the notice of trial-setting in the Berro file.

[10]Section 6068 provides in pertinent part: "It is the duty of an attorney to do all of the following: [¶] (a) To support the Constitution and laws of the United States and of this state."

required to set aside the default. However, those cases merely hold that in certain instances of gross neglect by an attorney, an order to set aside the default judgment is appropriate. Both cases noted the broad discretion of the trial court to make such a decision based on the facts of the case. (*Vartanian* v. *Croll, supra,* 117 Cal.App.2d at p. 644; *Daley* v. *Butte County, supra,* 227 Cal.App.2d at p. 394.)

Natali's argument puts a smoke screen over the issue. The superior court did *not* make a determination as to whether Natali violated the Rules of Professional Conduct. Such a question was not before it. As stated previously, it appears that the default judgment was fair to Berro. Thus, the court was well within its discretion to deny the motion to vacate without reaching the question of Natali's misconduct. Moreover, the evidence indicates that the superior court judge believed that Natali had been negligent but stated that Berro's only remedy was against Natali personally.

■ Natali's second contention is that the State Bar's order to show cause in the Berro proceeding, dated November 19, 1985, did not mention any misconduct pertaining to the at-issue memorandum. On the first day of Natali's hearings, Natali's attorney objected to the introduction of evidence pertaining to the at-issue memorandum, claiming that the order to show cause did not provide notice that the State Bar would be examining that issue. The examiners countered that Natali knew that his conduct in the Berro dissolution would be examined and therefore that the misconduct involving the at-issue memorandum was included. The hearing panel overruled the objection.

Although the notice to show cause did not expressly identify misconduct pertaining to the at-issue memorandum, it did state that Natali was being charged with violations of Business and Professions Code sections 6103 and 6068, subdivision (a). Section 6103 provides that wilful violation of a court order in bad faith is cause for suspension or disbarment. The evidence involving the at-issue memorandum, inter alia, showed that Natali violated an express court order. Thus, Natali was certainly put on notice that he was charged with violating a court order and that evidence of such violation would be introduced. Furthermore, the notice to show cause *did* put Natali on notice that he would be questioned concerning his representation of Berro. The at-issue memorandum was set forth in the records of the *Berro* proceeding, which the State Bar provided to Natali approximately one year prior to the hearing. Again, Natali had fair notice that he might be questioned regarding the document. Moreover, Natali himself first introduced the at-issue memorandum in the course of formal testimony before the State Bar Hearing Panel on the first day of his hearing. He stated that he filed one document, the at-issue memorandum, during his representation of Berro. In

addition, Natali raised his objection to introducing the at-issue memorandum on September 16, 1986, the first day of the hearing. Two subsequent hearings followed on September 22 and October 6, when Natali had further opportunity to address the issue. Natali does not make any showing that he was unable to meet the evidence regarding the at-issue memorandum. Accordingly, we conclude that the failure to mention the at-issue memorandum in the order to show cause did not prejudice Natali's defense.

2. *Aggravating and Mitigating Circumstances.*

Natali has a prior record of discipline. He was publicly reproved in 1984 for failing to protect his clients' interests, failing to move for leave to withdraw as their attorney, and failing to provide an accounting of funds held in his trust account. We must also consider the Hughes proceeding as an aggravating factor. Technically, that proceeding is another example of prior disciplinary action against Natali.

Other aggravating factors should also be considered. Viewed together, Natali's misconduct in the Hughes and Berro matters, as well as in the matter for which he was first disciplined by public reproval, presents a picture of a continuing pattern of serious misconduct, which has recurred from 1975 through 1985. In all three matters Natali failed to perform legal services competently. In each case he accepted employment, partially performed services for his clients, and then abandoned his clients' interests.

In further aggravation, in both the Hughes proceeding and the Berro proceeding, Natali failed to admit any wrongdoing. Rather than accepting responsibility for his misconduct, Natali blamed others. In the Hughes proceeding he blamed his staff and a process server for not serving Hughes's complaint. In the Berro proceeding he blamed opposing counsel Andreas for his own failure to appear at a scheduled hearing by accusing Andreas of lying to the court regarding an alleged stipulation to continue the hearing; he blamed the postal service for his failure to file an at-issue memorandum by the date ordered by the court; and he blamed his client for his failure to request a continuance of the trial date, suggesting that Berro removed and later reinserted a copy of the notice of trial date, thereby preventing Natali from having actual notice.

Natali's dishonesty and lack of candor to the court, his client, and the State Bar also weigh against him. In the Hughes matter, Natali wrote his client that he was in the process of serving her complaint, when in fact he was not. In the Berro matter he falsified a document to the court when he backdated the at-issue memorandum and he lied to the court about the alleged agreement with Andreas concerning the Berro trial date. In addi-

tion, the record contains numerous instances in which Natali was less than candid with the hearing panel.

In mitigation, the hearing panel found that Natali had suffered emotional strain due to the death of both of his parents in 1980. However, the panel concluded that the deaths were sufficiently remote in time that they should not have affected Natali's ability to practice law competently.

### III. *Disposition.*

■ We agree with the review department that discipline is warranted in both the Hughes proceeding and the Berro proceeding. We also agree that the Hughes proceeding, arising earlier in time, should be viewed as an aggravating circumstance in determining the degree of discipline in the Berro proceeding. However, we do not agree that the Hughes proceeding provides the basis for disbarment in the Berro matter.

In justification of disbarment the State Bar points to standard 1.7(b) of the State Bar Rules of Procedure, division V, Standards for Attorney Sanctions for Professional Misconduct (standards), which provides: "If a member is found culpable of professional misconduct in any proceeding in which discipline may be imposed *and the member has a record of two prior impositions of discipline* as defined by Standard 1.2(f), *the degree of discipline in the current proceeding shall be disbarment unless the most compelling mitigating circumstances clearly predominate.*" (Italics added.) ■ Although these guidelines are not binding on us, we nevertheless accord great weight to the review department's recommendation (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908]), and we will not reject a recommendation arising from application of the standards unless we have grave doubts as to the propriety of the recommended discipline. (*Lawhorn* v. *State Bar, supra*, 43 Cal.3d at p. 1366.) ■ Although under normal circumstances disbarment is warranted by a third disciplinary proceeding, we find here that compelling mitigating circumstances clearly predominate.

The problem with the review department's recommendation of disbarment is that Natali would be disbarred primarily because of the Hughes proceeding, a "prior" disciplinary proceeding in which we are concurrently imposing discipline. Although Natali has been before the State Bar Court in three separate proceedings, prior to issuance of this opinion Natali's record consisted of only one discipline, a public reproval. Although the State Bar recommends Natali's suspension in the Hughes matter, until today no discipline has been formally "imposed" in that proceeding. Moreover, Natali's

failure to act in the Hughes matter, although negligent, was not shown to be in bad faith. Under the circumstances here, in which the prior disciplinary record consisted of only a public reproval, and the second matter in which we are imposing discipline is not in and of itself egregious, following the guidelines of standard 1.7(b), disbarment is not appropriate in the present case.

Nevertheless, Natali's misconduct in the Berro dissolution is serious. Especially troubling are his direct violation of a court order and his lack of candor and probable dishonesty indicated by the falsification of documents and the misrepresentations made to the hearing panel.

For these reasons, and taking into account the ninety-day suspension recommended by the review department in the Hughes proceeding, we order in the consolidated cases that Dennis B. Natali be suspended from the practice of law for a period of five years; that execution of the order for suspension be stayed; that Natali be placed on probation for five years subject to actual suspension for three years; that during his period of suspension he take and pass the Professional Responsibility Examination; and that he comply with the additional terms of probation set forth in the State Bar Review Department's recommended orders. It is also ordered that Natali comply with the provisions of California Rules of Court, rule 955, and that the acts specified in subdivisions (a) and (c) of that rule be performed within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon finality of the decision.

KAUFMAN, J.—While I concur in the majority's affirmance of the findings of the Review Department of the State Bar Court, I respectfully dissent from the court's imposition of a three-year actual suspension as the appropriate discipline. I believe disbarment is warranted.

I agree with the majority that the review department improperly relied upon standard 1.7(b) of the State Bar Rules of Procedure, division V, Standards for Attorney Sanctions for Professional Misconduct, for its recommendation that petitioner Natali be disbarred. However, I find disbarment to be independently warranted in light of the serious and persistent nature of Natali's misconduct.

Over a period starting in 1975 and extending more than 10 years, Natali has demonstrated a chronic incapacity to represent his clients' interests properly. He has neglected cases which cried out for attention. He has failed to appear on critical hearing dates. He has failed to take reasonable steps to protect his clients from the deleterious results of his inaction. Instead of formally withdrawing and seeking to provide for a substitution of attorneys,

Natali simply has permitted one client to suffer a default judgment and another to have her case dismissed.

Even more disturbing perhaps is Natali's dishonesty in dealings with the courts and his dishonest attempt to mislead the court in connection with one of these incidents. He falsified the date on an at-issue memorandum and on the attached cover letter. In addition he blatantly violated a court order by demanding fees from his client to pay sanctions levied against him alone. Finally, Natali has shown no sign of remorse, has accepted no responsibility for his misconduct and has presented no substantial evidence in mitigation.

Under the circumstances I believe a suspension is insufficient to protect the public and the legal profession. (*Arden* v. *State Bar* (1987) 43 Cal.3d 713, 728 [239 Cal.Rptr. 68, 739 P.2d 1236] and cases there cited.) I would disbar petitioner Natali as recommended by the review department.

Lucas, C. J., concurred.

Petitioner's application for a reharing was denied June 30, 1988. Mosk, J., did not participate therein.