[No. S009673. June 18, 1990.]

DOUGLAS LINDLEY YOUNG, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Douglas Lindley Young, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi, Allen Blumenthal and Charles Aguado for Respondent.

OPINION

**THE COURT.**—The Review Department of the State Bar Court (hereafter review department) has recommended that petitioner be disbarred because of his conduct in withdrawing from employment without taking steps to avoid prejudice to his clients, failing to refund unearned fees and perform legal services competently (former Rules Prof. Conduct, rules 2-111(A)(2), (3), 6-101(A)(2)),[1] and wilfully disobeying court orders (Bus. & Prof. Code, § 6103).[2]

Petitioner, who was admitted to practice in 1980, was charged by the State Bar with seven counts of misconduct, involving in part the abandonment of his practice and his relocation to Florida in early 1986 without communicating with his clients.

In his "Response to Notice to Show Cause," he admitted that he left California without notifying his clients, but stated in mitigation that he had financial problems created by nonpaying clients and drug use, that he was

---

[1] Former rule 2-111(A) provided in part, "(2) . . . [A] member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

"(3) A member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."

Former rule 6-101(A)(2) provided, "A member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

The substance of these rules now appears in Rules of Professional Conduct, rules 3-700(A)(2), (D)(2) and 3-110(A).

New Rules of Professional Conduct became operative May 27, 1989; all further references to rules in this opinion refer to the former Rules of Professional Conduct, unless otherwise noted.

[2] All statutory references are to the Business and Professions Code, unless otherwise noted.

Section 6103 provides, "A willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

Petitioner was also found to have violated the duty to support the Constitutions and laws of the United States and of California. (§ 6068, subd. (a).)

ill, depressed and sluggish because he was suffering from hepatitis, and that the drug problem had been arrested by his participation in a recovery program.[3]

He stipulated to the facts underlying the charges against him and acknowledged that his conduct justified the imposition of discipline. However, he challenges the recommendation of disbarment, claiming that this penalty is too severe.

The stipulations are set forth below, followed by the explanations offered by petitioner at the hearing before the Hearing Department of the State Bar Court (hereafter hearing panel) regarding the incidents of misconduct with which he was charged:

*Count 1—The Carranza Matter:* In January 1986, Victor Carranza hired petitioner in a criminal matter, agreed to pay him $1,500, and paid $700 of that sum. Thereafter, petitioner wilfully failed to communicate with Carranza. After February 1986, petitioner left the state to reside in Florida, and did not tell Carranza that he had relocated. He wilfully failed to appear for a hearing in the matter on February 26, 1986, or to perform the services for which he was hired. Carranza was unable to locate petitioner, and the case was taken off calendar because of petitioner's absence. In March 1986, a judge issued a body attachment for petitioner and appointed the public defender to represent Carranza. Petitioner failed to appear at the subsequent hearing, in violation of a court order, although he eventually appeared, and the warrant for his arrest was removed.

At the hearing, petitioner testified that while he did not complete the work for which Carranza employed him, he performed $700 worth of work, the amount he received, since he made several appearances on Carranza's behalf.

*Count 2—The Austin Matter:* In November 1985, petitioner agreed to represent Lawrence Austin in a criminal appeal. He wilfully failed to file an opening brief, and the appeal was dismissed, although it was reinstated by the court in March 1986 because of Austin's assertion of inadequate representation of counsel. Petitioner wilfully failed to withdraw as counsel of record.

---

[3] Petitioner alleged that his "drug problems have been arrested, and . . . [he] has completed a 28 day in-house recovery program, has lived in a three-quarter house, and participated in after care, attending [Narcotics Anonymous] and [Alcoholics Anonymous] meetings on a daily basis, and is now sober and productive." He alleged further that he is a "changed person as is evidenced by new and productive thoughts, motives, and actions evidenced by physical exercise, spiritual activities, such as prayer and church, and by reading and participating in productive pursuits."

Petitioner testified that he explained to the Clerk of the Court of Appeal that Austin had not retained him, but because the court needed the name of an attorney of record, petitioner agreed to allow his name to be used. He did so only because he believed Austin would pay his fee. He was not contacted again by Austin and was not aware of any notices from the Court of Appeal regarding the case.

*Count 3—The Griffin Matter:* In November 1983, Richard Lee Griffin employed petitioner to represent him in a civil matter and paid $200 in costs. Petitioner performed services for Griffin until December 1985, but after February 1986 he wilfully failed to complete the services for which he was hired or to communicate with Griffin.

According to petitioner's testimony, he filed several demurrers and complaints and entered into settlement negotiations on Griffin's behalf even though he was not paid any fee. He did not anticipate when he abandoned his practice that he would remain in Florida for such an extended period and expected that he would return in time to complete the case before the statute of limitations had run.

*Count 4—The Maiden Matter:* In November 1985, Sylvia Maiden hired petitioner to prepare and file a petition for a writ of habeas corpus on behalf of her husband, and paid him $2,500. He failed to perform these services or to communicate with his client regarding the status of the writ. In November 1986, he was notified by the State Bar that a complaint had been filed against him for this omission, and in March 1987 he filed an application and petition for the writ. By such conduct, petitioner wilfully failed to use reasonable diligence and his best judgment to accomplish with reasonable speed the purpose for which he was employed.

Petitioner testified that it took some time to obtain records necessary to file the petition, and that during the period of delay Mrs. Maiden was given the opportunity to obtain a refund of the fee but chose to continue to employ petitioner. Ultimately he performed the work for which he was paid, and in fact performed additional services by filing a petition for review with this court.

*Count 5—The Mikes Matter:* On January 17, 1986, Melvin Mikes paid petitioner $2,000 to represent him in a criminal matter. Petitioner wilfully failed to communicate with his client regarding the status of the case. In early February of that year, petitioner was dismissed as Mikes's attorney and agreed to return the fee, but failed to do so.

He testified that the trial was a murder trial, that the fee agreed upon was $6,000 but he was paid only $2,000, and that he made three or four

appearances on Mikes's behalf and proceeded to prepare for trial. He was sick on the day trial was scheduled, and it was agreed that another attorney would be hired to defend Mikes. At the time of the hearing, he had repaid $600 of the $2,000 fee he received.

*Count 6—The Flagg Matter:* In June 1985, Jorden Flagg paid petitioner $2,500 to prepare and file an application for a writ of habeas corpus. He prepared these documents in August 1985, but failed to file them. He thus failed to earn the full amount of the fee he was paid, and wilfully failed to refund the unearned portion.

Petitioner testified that he failed to file the application for the writ because his client asked him not to do so. He testified that the services he performed were worth more than the $2,500 he received, although the referee pointed out that this testimony was inconsistent with his stipulation.

*Count 7—The Simms, Grimes and Moody Matters:* In January 1986 and February 1987, petitioner wilfully failed to appear at the sentencing hearing of John Simms, and was held in contempt.[4] His client was a fugitive and was sentenced in absentia.

Petitioner wilfully failed to appear at a pretrial hearing to dismiss charges against his client Grimes in a criminal matter in January 1986. The court held petitioner in contempt, but dismissed the charges against Grimes.

Also in January 1986, petitioner wilfully failed to appear in a contempt proceeding against him arising from his representation of his client Moody, and he was held in contempt.

In all three cases, a bench warrant was issued against petitioner for his failure to appear. In April 1986, he was convicted of contempt in all three matters, and ordered to pay a fine of $1,000 within sixty days. He failed to pay the fine until more than a year later, and was sentenced to five days in jail, but the sentence was stayed.

Petitioner testified that he did not receive notice of the Simms hearing because the district attorney mailed the notice to the wrong address. As to Grimes, the court had acknowledged prior to the hearing that petitioner's client was not the person who committed the crime and had said that it would dismiss the case at the next hearing, and therefore the client was not harmed by his failure to appear. Finally, prior to the Moody hearing, it was

---

[4]The February 1987 date is probably an error. The State Bar concedes that it is unlikely that there would be two separate sentencing hearings, thirteen months apart, in the same proceeding.

agreed that another attorney would substitute for petitioner on the case, and the substitution was made a few days after the hearing at which petitioner failed to appear.

It was stipulated that petitioner violated former rule 2-111(A)(2) and sections 6103 and 6068, subdivision (a), as to all counts, former rule 6-101(A)(2) as to all counts except count 5, and former rule 2-111(A)(3) as to counts 5 and 6.

In mitigation, the stipulation notes that petitioner had no prior record of discipline, and that he was candid and cooperative in his dealings with the State Bar.

At the hearing, petitioner apologized for his conduct and stated that he was making 15 or 20 court appearances a week during the period in question and was conducting several trials, and that he was under severe financial strain because clients were not paying their fees. These stresses, combined with the fact that he was ill with hepatitis, drained his energies and impaired his judgment. Several witnesses testified before the hearing panel that petitioner was a competent attorney, that at the time he abandoned his practice he was working very hard and was under stress because his clients were not paying for his services, and that following his return from Florida he has conducted his practice diligently and competently.

Terran Steinhart, a lawyer with whom petitioner had shared offices shortly before he abandoned his practice, stated that before he moved to Florida, petitioner was undergoing both financial and emotional difficulties and appeared to be ill. He believed petitioner was using drugs at the time he abandoned his practice, although he was not certain of this because, while he had seen petitioner use drugs, he did not make this observation at the time of the abandonment. Petitioner admitted he was using drugs in 1986, but refused to state whether the drug he was using was cocaine, on the ground that the answer might incriminate him.

Petitioner introduced into evidence a report from a laboratory in Florida, indicating that a person with petitioner's name was suffering from hepatitis A and B in February 1986. He stated that he had received the report from his doctor in Florida, and that the report referred to a test performed upon him. Two doctors testified at the hearing that this disease is characterized by lethargy, fatigue, memory loss, reduced capacity for sound reasoning and reduced mental capacity, but that a person in that condition would not be totally incapacitated.

The report was admitted over objections by the State Bar that it lacked a foundation, since there was no evidence as to where it came from or how

the test was performed. The hearing panel referee (hereafter referee) over-ruled the objection on the ground that the two doctors who testified regarding the report had referred to it to support their opinions.

The referee found as follows: Petitioner had abandoned his practice, and the abandonment was wilful. He did not notify his clients that he was moving to Florida, although he could have done so. In mitigation, however, he had encountered personal and health problems. He was seriously ill with hepatitis, and it took him a substantial amount of time to recover. There was no direct evidence linking defendant with the laboratory test introduced into evidence, but it can be inferred that the test referred to petitioner. The medical evidence indicated that the person who was the subject of the test would be unable to perform normal tasks without feeling grossly tired and ill, and a period of six to eight weeks was required for recovery. The State Bar did not "substantially" object to the admission of the report. Petitioner had resolved his problems and was handling his practice diligently.

The referee recommended that petitioner be suspended from the practice of law for three years, but the suspension was stayed and petitioner was placed on probation. He was actually suspended, however, until he made restitution to his former clients. It was also ordered that during the period of probation he refrain from the use of intoxicants, pass the Professional Responsibility Examination, and comply with other requirements.

Following the State Bar examiner's request for review, the review department concluded that disbarment was the appropriate penalty. It rejected as a mitigating factor petitioner's claim that he was suffering from the effects of hepatitis, finding that the Florida laboratory report was insufficient to prove that he had abandoned his practice because of illness. This conclusion was based on Attorney Steinhart's testimony that petitioner was using drugs about the time he abandoned his practice, and on the fact that petitioner had not established that the report actually referred to him or that he was ever tested. In addition, the report lacked any foundation as to the truth of its contents, and petitioner did not testify regarding his purported illness or disability.[5]

■ ■ ■ ■ The review department found in aggravation of the offenses that: (1) petitioner's actions demonstrated a pattern of misconduct since he was guilty of separate acts of wrongdoing in August 1985 (count 6), November and December 1985 (count 2), and January and February 1986

---

[5] It was also found that the February 1986 date on the report was inconsistent with petitioner's stipulation that he went to Florida "subsequent to February 1986."

(counts 1, 3, 5 and 7); (2) his actions significantly harmed clients (counts 2 and 4 and count 7 as to Simms), and the administration of justice (counts 1, 2 and 7); (3) the repeated abandonment of his duties and his clients demonstrated contempt for the practice of law (see Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.4(a));[6] (4) the multiple findings of contempt of court and a jail sentence involved moral turpitude (std. 2.3);[7] and (5) petitioner's misconduct resulted to a significant extent from his use of drugs, and since there was no testimony as to the extent or kind of drugs petitioner used or of any efforts on his part to bring his drug use under control, his continued practice of law presented a danger to the public.[8]

Petitioner challenges these conclusions on numerous grounds. He claims that when reasonable doubts are resolved in his favor, the evidence demonstrates that the abandonment of his practice was due to illness rather than drug use, and that, therefore, the review department should have considered his illness as a mitigating factor in his favor. Second, he asserts the evidence does not support the findings that he had demonstrated a pattern of misconduct that significantly harmed clients and the administration of justice, and that his conduct evidenced a contempt for the practice of law and amounted to moral turpitude.

We shall conclude that the penalty of disbarment is too severe under the circumstances. The standards by which we make this determination are well established. ■ The object of disciplinary proceedings is to protect the public and the courts, and to preserve confidence in the legal profession. ■ In deciding the proper sanctions, the court considers all relevant factors and mitigating circumstances on a case-by-case basis. (*Murray v. State Bar* (1985) 40 Cal.3d 575, 583 [220 Cal.Rptr. 677, 709 P.2d 480].) Our duty is to examine the record, weigh the evidence, and make an independent assessment whether the review department's recommendations should be upheld. (*Levin v. State Bar* (1989) 47 Cal.3d 1140, 1147-1148 [255 Cal.Rptr. 422, 767 P.2d 689].) ■ The burden is on petitioner to

---

[6] The standards are for the guidance of the State Bar and are not binding on this court. (*Boehme* v. *State Bar* (1988) 47 Cal.3d 448, 454 [253 Cal.Rptr. 245, 763 P.2d 1335].) All further references to standards are to this source.

Standard 2.4(a) provides, "Culpability of a member of a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained shall result in disbarment."

[7] Standard 2.3 provides in part, "Culpability of a member of an act of moral turpitude . . . shall result in actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed . . . and . . . the magnitude of the act of misconduct and the degree to which it relates to the member's acts within the practice of law."

[8] Two members of the review department voted against the majority, one of them on the ground that petitioner's conduct did not call for disbarment in view of his efforts at restitution and rehabilitation and his insight into his problems.

demonstrate that the review department's decision should not be followed (*Natali v. State Bar* (1987) 45 Cal.3d 456, 463 [247 Cal.Rptr. 165, 754 P.2d 211]), but the charges against him must be supported by convincing proof and to a reasonable certainty (*Skelly v. State Bar* (1973) 9 Cal.3d 502, 508-509 [108 Cal.Rptr. 6, 509 P.2d 950]). Reasonable doubts must be resolved in his favor, and if equally reasonable inferences may be drawn from a fact, the inference which leads to a conclusion of innocence will be accepted. (*Ibid.*)

■ The hearing panel's findings of fact are accorded great weight because it is in a better position than the review department to resolve conflicts in the evidence. (*In re Cohen* (1974) 11 Cal.3d 935, 944 [114 Cal.Rptr. 611, 523 P.2d 651].) But the recommendation of the review department as to punishment is entitled to deference. (*Coppock v. State Bar* (1988) 44 Cal.3d 665, 682 [244 Cal.Rptr. 462, 749 P.2d 1317]; *Galardi v. State Bar* (1987) 43 Cal.3d 683, 693-694 [238 Cal.Rptr. 774, 739 P.2d 134]; *In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].) In case of conflict between the disciplinary recommendations of these two bodies, the recommendation of the review department is afforded greater weight. (*Garlow v. State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106].)

Petitioner admitted by stipulation the facts underlying the disciplinary sanctions, with the explanations set forth above, and there is no need, therefore, to consider whether he in fact committed the acts described. Our concern is whether the misconduct justified disbarment, and this determination depends in part on an evaluation of the mitigating and aggravating factors found by the review department. Petitioner's major contention is that the abandonment of his practice was caused by his illness with hepatitis, and that the review department improperly rejected the showing he made in this regard and found, without sufficient evidentiary support, that drug use contributed substantially to his actions.

Before analyzing the correctness of these claims, we consider petitioner's challenge to the other factors in aggravation found by the review department.

■ The finding that petitioner's acts demonstrated a "pattern of misconduct" is based on his actions from November 1985 through February 1986.[9] But petitioner's move to Florida in early 1986, while resulting in the

---

[9] The finding also includes petitioner's acts in August 1985 as showing a pattern of misconduct as to count 6 (the Flagg matter), but this date must be an error. The stipulation states that in August 1985 petitioner prepared a petition for habeas corpus for Flagg and failed to complete the services for which he was hired, but petitioner testified that he did not file the writ because his client had instructed him not to do so.

abandonment of several clients, did not evidence a "pattern of misconduct." Such a finding cannot be based on one occurrence of abandonment, even though its consequences affected several persons over a period of a few months. In a recent case we observed that "only the most serious instances of repeated misconduct over a prolonged period of time and multiple instances of misappropriation have warranted actual suspension, much less disbarment." (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1367 [240 Cal.Rptr. 848, 743 P.2d 908].) This is not such a case. It may also be noted that the standards provide that if the misconduct does not "demonstrate a pattern," the appropriate discipline is reproval or suspension. (See std. 2.4(b).)[10]

■ Next, the review department found that petitioner's misconduct significantly harmed clients as to counts 2 and 4 and count 7 as to Simms. We fail to see how it can be said that these clients were "significantly" harmed. In count 2, the Austin matter, petitioner agreed to represent Austin but failed to file an opening brief when his client did not pay a fee. Austin's appeal was dismissed, but was reinstated six months later. A delay of a few months in prosecuting an appeal, while it may be harmful to a client, is not unusual, and does not, standing alone, warrant the conclusion that the client was "significantly" harmed thereby.

Count 4, the Maiden matter, involved petitioner's failure to file a petition for a writ of habeas corpus until March 1987, although he was retained in November 1985. Ultimately, he filed the petition and it was denied. Petitioner testified that it took some time to obtain records necessary to file the petition, and that the client was offered the opportunity for a refund of the fee but chose to continue to retain petitioner. Without more facts relating to the amount of the delay in filing the petition that was caused by petitioner's abandonment of his practice and Maiden's status at the time petitioner was employed, the review department's conclusion that Maiden was substantially harmed by the delay in seeking the writ cannot be upheld.

Finally, there are no facts in the record to indicate that Simms was substantially harmed by petitioner's failure to appear at a sentencing hearing at which he was sentenced in absentia.

■ The review department also concluded that the multiple findings of contempt and the imposition of a jail sentence involve moral turpitude. ■ The most common definition of an act of moral turpitude is one that is "contrary to honesty and good morals." (See, e.g., *Stanford* v. *State*

---

[10]The reasoning above also applies to the review department's conclusion that petitioner repeatedly abandoned his duties and his clients, thereby demonstrating contempt for the practice of law.

*Bar* (1940) 15 Cal.2d 721, 727-728 [104 P.2d 635]; *Marlowe* v. *State Bar* (1965) 63 Cal.2d 304, 308 [46 Cal.Rptr. 326, 405 P.2d 150].) ■■■ In determining whether petitioner was guilty of such conduct, we must look to his own acts rather than to the rulings of a court in response to his conduct. It is doubtful that petitioner's actions amounted to moral turpitude: he was not accused of acting dishonestly, and he did not commit a criminal act or habitually abandon his clients. In any event, the fact that an attorney is guilty of moral turpitude may be grounds for suspension rather than disbarment, depending on the extent of harm to the victim, the magnitude of the act of misconduct, and other factors. (See fn. 7, *ante*, at p. 1215.)

■■■ We come, then, to the question whether the record supports the review department's findings that petitioner's misconduct was not mitigated by proof that he was suffering from the effects of hepatitis at the time he abandoned his practice, and that his actions resulted to a significant extent from his use of drugs.

On the first of these issues, as we have seen, the referee found that petitioner was seriously ill with hepatitis at the time he abandoned his practice, inferring that the laboratory report referred to petitioner.

The review department rejected this conclusion on the ground that petitioner failed to prove that the report referred to a test performed on him. In effect, it held the report inadmissible as lacking a foundation.[11] In State Bar proceedings, error in the admission or exclusion of evidence does not invalidate a finding of fact unless the error complained of resulted in a denial of a fair hearing. (Rules Proc. of State Bar, rule 556.) Even if the referee erred in admitting the report, we cannot say that the error had this result. At the hearing, petitioner stated, without objection by the State Bar, that the report referred to a test performed upon him, and that he received the report from his doctor. Moreover, during the examination of a medical witness who testified regarding the severity of the illness revealed by the report, the witness, petitioner, and even the State Bar's attorney referred to petitioner as the subject of the report. It was not until the close of petitioner's case, when, at the referee's suggestion, petitioner moved that the report itself be admitted, that the State Bar interposed its objection.[12]

---

[11] As we have seen, the review department based its rejection of the report on the grounds that there was no evidence that it referred to petitioner, no foundation as to the truth of its contents, and no testimony as to the intensity or duration of petitioner's illness, and because the February 25 date of the report was inconsistent with petitioner's stipulation that he went to Florida "subsequent to February 1986."

[12] Before petitioner provided the Florida report to one of the doctors who testified as to the effects of the illness revealed by the report, the State Bar's attorney asked to see it to be sure that it was the same report he had seen previously. Apparently satisfied that it was the same report, he did not object to the doctors' use of the report as the basis of their testimony. Petitioner stated at the hearing that the report referred to him, and during the examination both petitioner in asking questions and the doctor in answering them referred to petitioner as

In these circumstances, and in view of the strong presumption accorded the referee's findings of fact (*Garlow* v. *State Bar, supra,* 30 Cal.3d at p. 916), we cannot agree with the review department that the record fails to support the referee's finding that petitioner was suffering from the effects of hepatitis at the time of his misconduct.

■■■ Contrary to petitioner's assertion, however, the record also supports the finding that he had used drugs about the time he abandoned his practice. He challenges the review department's reliance on testimony by Attorney Steinhart on the ground that Steinhart's opinion was "sheer speculation," that he was not an expert, and that Steinhart was not sharing offices with petitioner when the abandonment occurred. But Steinhart testified that he had actually seen petitioner use drugs, and even though he might not have made this observation at the very moment that petitioner abandoned his practice, he was sharing offices with petitioner around the time of such abandonment and had ample opportunity to observe petitioner's condition. In any event, petitioner admitted at the hearing that he had used drugs.

But the evidence does not support the review department's finding that drug use was a "significant" factor in the abandonment of petitioner's practice. On this issue, we have only the testimony of Attorney Steinhart that in his opinion the pressures of private practice had a greater effect on petitioner than it would have had on others because "he got involved in drugs." Since he did not consider the possibility that petitioner's illness contributed to his actions, and the review department erroneously concluded that there was no such contribution, the record does not support by convincing proof and to a reasonable certainty the finding that drug use was a significant factor leading to petitioner's abandonment of his practice.

■■■ ■■■ Petitioner's assertion, that the review department's finding regarding drug use was made in violation of his constitutional right to due

the subject of the report. Even the State Bar attorney made that assumption in his questioning, asking the doctor, "You don't know how long Mr. Young had this illness, do you?" Thereafter, a second doctor testified regarding the severity of the illness indicated by the report.

It was not until after petitioner had rested his case that the question of admissibility of the report itself was raised. It was at this point, after the referee asked petitioner whether he wished to offer the report into evidence and petitioner moved that it be admitted, that the State Bar objected to admission on the ground that the report lacked a foundation. Petitioner stated that he had received the report from his doctor and that up to that point the State Bar's attorney had said he would stipulate to admission of the report. The referee observed that ordinarily the report would be objectionable on the ground that it lacked a foundation and was hearsay, but that he would admit it because both doctors had used it as part of their testimony.

process of law, is without merit. He urges that it was fundamentally unfair for the review department to focus on his drug use as an aggravating factor because he had no notice that his use of drugs would be used as a factor against him, as none of the counts discussed above related to the use of drugs. Moreover, he asserts, he was not afforded the opportunity to be heard on the issue of his use of drugs since the review department did not allow him to introduce evidence on that subject and confined him to a five-minute oral argument.

It is difficult to determine the basis for these claims. Petitioner placed the question of his drug use in issue when he admitted in his "Response to Notice to Show Cause" that he had used drugs at the time he abandoned his practice, and he admitted to the use of drugs in his testimony before the hearing panel. He did not seek to introduce any evidence on the subject and, to the contrary, refused to answer a question as to the type of drugs he used, on Fifth Amendment grounds. The review department does not conduct evidentiary hearings but, rather, reviews the record before the referee. (Rules Proc. of State Bar, rules 450-452.)

Petitioner apparently asserts that because he failed to introduce any evidence to support the allegation in his "Response to Notice to Show Cause" that he was rehabilitated, he made a "tactical decision to withdraw drug use as a mitigating circumstance," and therefore the review department was prohibited from considering his admitted drug use as an aggravating factor. This claim is obviously without merit. The fact that petitioner did not himself raise the issue of drug use at the hearing does not mean that the review department was prohibited from relying on his admissions in that regard in deciding the appropriate discipline to be imposed.

In summary, the record demonstrates that petitioner's abandonment of his practice was caused by a combination of his illness with hepatitis and the stress of a heavy trial schedule and financial problems, and that he used drugs at the time he abandoned his practice. But it does not establish clearly that drug use was a substantial factor leading to his misconduct. The question is whether this evidence supports the review department's conclusion that petitioner's continued practice of law presents a danger to the public. In this connection, several witnesses testified that following the incidents referred to above petitioner resumed his practice and worked diligently and capably on behalf of his clients. The referee so found, and there was no evidence to the contrary. We cannot say that the record before us demonstrates that protection of the public requires that petitioner be disbarred.

The penalty of disbarment appears too severe under the circumstances of this case. As to most of the clients from whom he took fees in the counts set forth above, petitioner not only performed substantial services for the fees

he received, but in some instances he performed work for which he was not paid. Moreover, he made a substantial showing of mitigation in that his illness with hepatitis and the pressures of practice contributed to his misconduct, that none of his clients was substantially harmed, that he had no prior record of discipline, that he showed remorse for his actions, and that he cooperated fully with the State Bar in its investigation.

The discipline appears more severe than that imposed in other cases. While habitual disregard by an attorney of the interests of his clients, combined with the failure to communicate with them, may justify disbarment (*Kent* v. *State Bar* (1987) 43 Cal.3d 729, 735 [239 Cal.Rptr. 77, 739 P.2d 1244]), an examination of the decisions that have resulted in disbarment for such misconduct demonstrates more egregious acts by the attorney or a record of many prior instances of discipline. (E.g., *Marcus* v. *State Bar* (1980) 27 Cal.3d 199 [165 Cal.Rptr. 121, 611 P.2d 462] [failure to use reasonable diligence on behalf of a client in one instance, and to perform services for which he had been retained in another; twelve similar prior acts or courses of misconduct; two suspensions from practice for other types of misconduct]; *Grove* v. *State Bar* (1967) 66 Cal.2d 680 [58 Cal.Rptr. 564, 427 P.2d 164] [ten counts of unprofessional conduct over a period of four years, including failure to file or defend suits, retaining fees for services not performed, failing to report money collected for clients, false representation, and purposeful evasion of communication with clients; failure to appear at local administrative committee hearing; one prior suspension and one prior reprimand]; *Schullman* v. *State Bar* (1976) 16 Cal.3d 631 [128 Cal.Rptr. 671, 547 P.2d 447] [abandonment of clients in two instances; five prior suspensions over an eleven-year period, three for abandoning clients, one for misappropriating clients' funds, and one for appearing at legal proceedings while under suspension]; *Ridley* v. *State Bar* (1972) 6 Cal.3d 551 [99 Cal.Rptr. 873, 493 P.2d 105] [over a four-year period, four instances of failure to perform services or return fees, two instances of failure to file or prosecute actions, and making false statements to clients and the State Bar]; *Simmons* v. *State Bar* (1970) 2 Cal.3d 719 [87 Cal.Rptr. 368, 470 P.2d 352] [three instances of wilful abandonment of clients resulting in harm to them; two prior suspensions for misappropriating clients' funds].)

By contrast, we have imposed penalties short of disbarment for conduct more reprehensible than was demonstrated in this case. (E.g., three years' suspension, with actual suspension of four months and probation, for six instances of failure to render legal services after receiving a retainer, failure to respond to clients' inquiries, failure to deposit clients' funds in a trust account, misrepresentation regarding refund of legal fees, withholding legal fees from clients' funds without prior agreement, and showing disrespect for the trial court, as well as a prior public reproval for professional misconduct

in two matters: *Inniss* v. *State Bar* (1978) 20 Cal.3d 552 [143 Cal.Rptr. 408, 573 P.2d 852]; four years' suspension and probation, with actual suspension of one year for three instances of misappropriation of client funds and one instance of wilfully failing to perform services: *Smith* v. *State Bar* (1984) 37 Cal.3d 17 [206 Cal.Rptr. 545, 687 P.2d 259]; five years' suspension and probation, with two years' actual suspension, for conviction of solicitation to kill a former client, as well as two prior private reprovals: *In re Mostman* (1989) 47 Cal.3d 725 [254 Cal.Rptr. 286, 765 P.2d 448].)

In our view, petitioner's conduct warrants a three-year suspension, with execution stayed, probation for that period, and actual suspension for two years. Since the evidence demonstrates that petitioner used drugs about the time he abandoned his practice, our order shall include directions to assure that he abstain from such use in the future.

It is hereby ordered that Douglas Lindley Young be suspended from the practice of law for three years from the date this opinion is final. Execution of the order is stayed, and petitioner is placed on probation for three years, on conditions including actual suspension for two years. Petitioner is to be assigned a probation monitor referee pursuant to rules 610 and 611 of the State Bar Rules of Procedure, for a period of three years. During his probation, petitioner is subject to the following conditions: (1) that he make restitution in the Mikes and Flagg matters during the first year of probation; (2) that he comply with the provisions of the State Bar Act and the Rules of Professional Conduct of the State Bar of California; (3) that he abstain from the use of any restricted drug or controlled substance; (4) that he submit, as reasonably required by the probation monitor, to periodic and random drug testing; (5) that he remain in or become active in a substance-abuse recovery program as directed by the probation monitor referee; and (6) that he file with the State Bar such reports concerning compliance with the conditions of probation as directed by the probation monitor referee. It is further ordered that he take and pass the Professional Responsibility Examination during the period of his actual suspension from the practice of law. This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)