[No. S016863. Apr. 25, 1991.]

J. WILLIAM CONROY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

J. William Conroy, in pro. per., for Petitioner.

Diane C. Yu, Richard J. Zanassi, Ann M. Finneran and E. Lisa Vorgias for Respondent.

## OPINION

### THE COURT.—

#### INTRODUCTION

We review the unanimous recommendation of the State Bar Court Review Department (review department) that petitioner J. William Conroy (Conroy) be suspended from the practice of law for two years, that the order of suspension be stayed, and that he be placed on probation for two years on conditions including an actual suspension of six months. The recommendation is based upon one finding of aggravated abandonment of a client. Conroy failed to respond to the notice to show cause and allowed his default to be entered. We believe that the review department's recommended discipline is insufficient in light of petitioner's misconduct and his past disciplinary record as reflected in the record below. Therefore, we conclude that Conroy should be suspended from the practice of law for a period of five years; that execution of suspension be stayed; and that Conroy be placed on probation for the five years subject to the conditions adopted by the review department, and the condition that Conroy be actually suspended from the practice of law for a period of one year.

#### FACTS

Conroy was admitted to the practice of law in 1967. He has a prior record of discipline consisting of a private reproval and a 60-day actual suspension for failing to take the Professional Responsibility Examination within a 1-year period specified in the probation conditions of his private reproval. (*Conroy v. State Bar* (1990) 51 Cal.3d 799 [274 Cal.Rptr. 692, 799 P.2d 772] (*Conroy I*).)

A. *The Beaton Matter.*

On June 1, 1984, Brian Beaton, a "tree topper" for the City and County of San Francisco (City), was seriously injured when, during the course of his employment, he fell from a tree. Beaton was taken to a hospital and, based on the accident, the City retirement system (which administers workers' compensation claims for the City) automatically opened a workers' compensation claim file for Beaton.

Beaton and his father retained Conroy to represent Beaton in his workers' compensation claims and in any possible tort claims against the City. On September 7, 1984, Conroy filed a claim under the Tort Claims Act with the City. On October 12, 1984, the City denied the claim on the ground that

Beaton's exclusive remedy was workers' compensation. Since the Tort Claims Act requires that a person must file suit within six months of the denial of the claim (see Gov. Code, § 945.6), Conroy had until April 12, 1985, to file Beaton's lawsuit. On May 30, 1985 (after the expiration of the six-month period), Conroy filed a complaint against the City in San Francisco Superior Court. On September 2, 1987, the court sustained the City's demurrer without leave to amend on the ground of the exclusivity of workers' compensation law.[1]

Conroy took no further significant actions on Beaton's behalf. He failed to file an adjudication of the claim with the Workers' Compensation Appeals Board (WCAB) and failed to file a "serious and willful misconduct" claim in the workers' compensation matter within one year of Beaton's injury (as allowed under Lab. Code, §§ 4553, 5407). Throughout 1984-1987, Conroy failed to keep Beaton informed of the status of either the litigation or the workers' compensation claim. When Beaton or his father contacted Conroy, Conroy misrepresented to them that he had timely responded to the City's denial of Beaton's claim under the Tort Claims Act and that he had filed Beaton's claim with the WCAB.

In May 1987, dissatisfied with Conroy's handling of the matter, Beaton retained another attorney, Clark G. Leslie. Other than delivering Beaton's file (containing numerous gaps), Conroy failed to cooperate with Leslie. He neither signed nor returned a substitution of attorney form and failed to respond to Leslie's written and oral inquiries.

Due to Conroy's lack of cooperation with Leslie, Leslie reported Conroy to the State Bar. Leslie also filed a malpractice action against Conroy in San Francisco Superior Court on Beaton's behalf. Conroy defaulted and his default judgment was taken in excess of $1 million. Conroy successfully moved to set aside the default, and the malpractice action is still pending.

The Hearing Department of the State Bar Court (hearing panel), consisting of a single referee, found that Conroy, in violation of former rule 2-111(A)(2) of the Rules of Professional Conduct (rules),[2] withdrew from employment without taking reasonable steps to avoid foreseeable prejudice by failing to proceed with the workers' compensation matter or the superior court litigation, failing to respond promptly and accurately to Leslie, and failing to execute or explain his nonexecution of the substitution of attorney form. The referee also concluded that Conroy violated former rule 6-101(A)(2) by recklessly disregarding his obligation to perform legal

---

[1] The City did not raise the untimeliness of the complaint as a ground for its demurrer.

[2] All references to the Rules of Professional Conduct herein are to the former rules in effect during the period January 1, 1975, through May 26, 1989.

services competently; violated Business and Professions Code section 6068, subdivision (d) by using false statements in an attempt to mislead the superior court and the State Bar Court; violated Business and Professions Code section 6068, subdivision (m) by failing to keep Beaton, Beaton's father, or Leslie promptly and accurately informed of the status of the matters he was handling; and violated Business and Professions Code section 6103 (violation of his oath and duties as an attorney). The referee found no violation of section 6106 of the Business and Professions Code because petitioner's conduct "was not so depraved as to involve moral turpitude." The referee recommended five years' suspension, stayed, and five years' probation, conditioned on a one-year actual suspension.

The review department substantially adopted the hearing panel's decision but made some modifications. Like the hearing panel, the review department concluded that Conroy had violated former rule 2-111(A)(2). However, the review department based its conclusion only on Conroy's failure to cooperate with the successor attorney. The review department agreed that the failure to cooperate constituted a withdrawal from employment without taking reasonable steps to avoid foreseeable prejudice. However, the review department did not agree that Conroy's failure to proceed diligently with either the workers' compensation matter or the superior court litigation violated former rule 2-111(A)(2) since this conduct was during Conroy's representation of Beaton without any evidence of an intent to withdraw. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 816, fn. 5 [263 Cal.Rptr. 798, 781 P.2d 1344].) Moreover, since Conroy's inaction on his client's matter also violated former rule 6-101(A)(2), there was no need to make duplicative allegations of misconduct. (*Bates* v. *State Bar* (1990) 51 Cal.3d 1056, 1060 [275 Cal.Rptr. 381, 800 P.2d 859].)

The review department agreed with the hearing panel that Conroy had violated former rule 6-101(A)(2), and Business and Professions Code section 6068, subdivision (m).[3] In addition, the review department found that Conroy's misrepresentations to his client, as alleged in the notice to show cause and as admitted by Conroy's default, involved moral turpitude, in violation of Business and Professions Code section 6106.

The review department rejected the hearing panel's conclusion that Conroy had violated Business and Professions Code section 6068, subdivision (d), concluding that the State Bar had neither properly alleged[4] nor

---

[3] The review department noted that Business and Professions Code section 6068, subdivision (m) was enacted during Conroy's three-year failure to keep his client informed of the status of his case. Thus, it based its conclusion that Conroy violated section 6068, subdivision (m) only on misconduct occurring after the section's date of enactment.

[4] The review department found that the allegations of misrepresentations to the client were sufficiently alleged in the notice to show cause. However, it held that allegations that Conroy

proved[5] that Conroy had made misrepresentations to either the superior court or the State Bar. Finally, under the mandate of *Baker* v. *State Bar, supra,* 49 Cal.3d at page 815, the review department rejected the finding of culpability under Business and Professions Code section 6103. Based upon the modified findings of fact and conclusions of law, the review department recommended that petitioner be suspended from the practice of law for a period of two years, stayed, upon conditions that included a six-month actual suspension.

B. *Failure to Cooperate With the State Bar.*

The State Bar filed a one-count notice to show cause on March 22, 1989. On March 27, 1989, the notice to show cause was served by certified mail on Conroy's address of record with the State Bar. (Bus. & Prof. Code, § 6002.1, subd. (c).) Conroy signed the receipt for the notice. A notice of time and place of hearing was served on Conroy on March 29, 1989, setting the date for a mandatory settlement conference as June 26, 1989. The date for the formal hearing was to be set at the conference. Conroy never answered either notice. On May 8, 1989, the State Bar served Conroy by certified mail with a notice of application to enter default. Conroy signed the receipt for the notice but failed to respond. The State Bar served a notice of entry of default on Conroy by certified mail and filed the notice in the State Bar Court on June 5, 1989. (Rules Proc. of State Bar, rules 552.1, 555.)

On August 7, 1989, the hearing panel held a hearing on Conroy's default at which time the State Bar presented evidence. On August 29, 1989, the State Bar Court clerk sent Conroy a copy of the hearing panel's decision, along with a notice accompanying the service which warned that Conroy must bring a motion to set aside his default within 75 days. (Rules Proc. of State Bar, rule 555.1.)

Conroy neither sought to set aside the default nor sought relief in the review department. The review department scheduled the matter for a hearing on its own motion. In Conroy's last case before this court, he similarly

made "numerous misrepresentations of facts [of an unspecified nature]" to the superior court and the State Bar investigator were insufficiently alleged. The review department held that the State Bar could not rely on these insufficient allegations in a default proceeding.

[5] As an alternative basis for its rejection of the Business and Professions Code section 6068, subdivision (d) finding, the review department held that, assuming that the misrepresentations were properly alleged, the allegations were not supported by clear and convincing evidence. While this matter was a default hearing, the evidence offered by the examiner at the hearing contradicted the allegations of misrepresentation. The review department concluded that when the evidence undercuts or negates the allegations in the notice to show cause, it is the evidence, and not the allegations, that control the findings of fact.

ignored the State Bar proceedings and allowed his default to be entered. (*Conroy I, supra,* 51 Cal.3d at pp. 802-803.)

### C. *Mitigation and Aggravation.*

No evidence in mitigation was presented. As evidence in aggravation, the review department noted Conroy's previous record of discipline. (Rules Proc. of State Bar, div. V., Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(b)(i). All further references to standards are to these provisions.) In 1986, Conroy received a private reproval for misconduct in three separate matters.[6] As part of the probation conditions of his private reproval Conroy was ordered to take and pass the Professional Responsibility Examination within one year. He failed to do so. We affirmed the review department's recommendation that Conroy's disobedience of his probation condition, coupled with his failure to cooperate with the State Bar, warranted a 60-day actual suspension. (*Conroy I, supra,* 51 Cal.3d 799.)

Conroy's failure to cooperate with the State Bar in the present proceeding is also an aggravating circumstance. (Std. 1.2(b)(vi).) Although Conroy wrote a letter "Answer" to the State Bar investigator in December 1987, he never responded to the formal proceedings.

The review department did not find clear and convincing evidence that Conroy's conduct harmed Beaton. His conduct obviously caused delay and frustration. However, there was insufficient evidence to conclude that Conroy's conduct resulted in monetary harm as Beaton's case involved only the potential for monetary damages, not certain monetary damages.

### DISCUSSION

■ Our principal concern in State Bar disciplinary proceedings is always the protection of the public and the courts, the preservation of confidence in the legal profession (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1215 [270 Cal.Rptr. 315, 791 P.2d 994]), and the maintenance of the highest possible professional standards for attorneys. Though we accord the findings and recommendations of the State Bar great weight in determining

---

[6] In one matter, Conroy failed to communicate with his clients or opposing counsel and later failed to relinquish the clients' file to their new attorney. In another matter, Conroy, acting as an executor, failed to file a timely inventory of estate property or an accounting prior to the disposition of funds. In the third matter, Conroy's abandonment of a client resulted in the issuance of an arrest warrant for the client. He thereafter failed to assist in having the warrant withdrawn. Following the disciplinary hearing and decision by the review department, Conroy did not challenge the imposition of private reproval. (*Conroy I, supra,* 51 Cal.3d at p. 802, fn. 1.)

attorney disciplinary sanctions (*In re Basinger* (1988) 45 Cal.3d 1348, 1358 [249 Cal.Rptr. 110, 756 P.2d 833]), we exercise our independent judgment in determining the appropriate discipline to be imposed. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754].)

■ Conroy, in arguing that the recommended discipline is excessive, bears the burden of proving that the recommended discipline is erroneous or unlawful (*In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651]), and must show that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 184 [242 Cal.Rptr. 196, 745 P.2d 917].) He has made his task difficult by failing to cooperate in the formal State Bar proceedings. After completely ignoring those proceedings, Conroy only now comes forward to proffer his version of what occurred. As he did not present any evidence on his behalf in the formal proceedings, he has made it almost impossible to prove that the findings of the review department are not supported by the evidence or that the recommended discipline is excessive. (See *Baca* v. *State Bar* (1990) 52 Cal.3d 294, 303 [276 Cal.Rptr. 169, 801 P.2d 412].)

Conroy submits 41 paragraphs of "Actual Facts" that he claims prove that the recommended discipline is inappropriate. However, he fails to note that none of these "facts" were submitted in the formal State Bar proceedings. ■ On numerous occasions we have stated that an attorney has a duty to present favorable evidence at the disciplinary hearing and consequently we do not ordinarily rely on any evidence extrinsic to the record. (See, e.g., *Conroy I, supra,* 51 Cal.3d at p. 804; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858], cert. den. 419 U.S. 900 [42 L.Ed.2d 145, 95 S.Ct. 183].)

Our refusal to rely on such evidence is based on two grounds. First, the attorney has a duty to participate in the disciplinary proceedings. The attorney cannot abrogate this duty and then use this abrogation as a basis for review. (*Barreiro* v. *State Bar* (1970) 2 Cal.3d 912, 925 [88 Cal.Rptr. 192, 471 P.2d 992].) Second, such extrinsic evidence is inherently unreliable, not only because it is self-serving, but also because it is not subject to any cross-examination or other scrutiny. (*In re Rivas* (1989) 49 Cal.3d 794, 801 [263 Cal.Rptr. 654, 781 P.2d 946].)

■ Conroy's "actual facts" boil down to assertions that at all times during his representation of Beaton, he dealt with the Workers' Compensation Division, Employees' Retirement System of the City and County of San Francisco (the "City" as he terms it), not the Workers' Compensation Appeals Board (the "State" as he terms it). He claims "the case was not

ready to go before the Appeals Board" as it was not "ripe for adjudication." Conroy also alleges numerous "facts" that he claims disprove the findings of client neglect and failure to properly handle the case. The alleged facts are self-serving excuses for his behavior and include "several levels of hearsay statements and opinions." (See *In re Rivas, supra,* 49 Cal.3d at p. 801.) Conroy does not substantiate any of his claims with documentation or other proof, and there is no way to judge their credibility.

The appropriate forum for hearing Conroy's evidence was before the State Bar Court, where he could have presented his evidence and argued his contentions. That evidence could then have been challenged by the State Bar Office of Trial Counsel and appropriate findings could have been made by the State Bar Court. We refuse to rely on Conroy's factual allegations as they are virtually impossible to evaluate in the absence of cross-examination. (See *In re Possino* (1984) 37 Cal.3d 163, 171 [207 Cal.Rptr. 543, 689 P.2d 115], fn. omitted.)

Conroy's legal argument primarily consists of several quotations from our State Bar cases. He fails to relate these quotes to the facts of this case. Conroy's facts and arguments fail to meet his burden of proving that the findings of the review department are unsupported by the record.

The review department carefully examined the record in this case. The review department resolved questions of ambiguity in favor of Conroy and deleted findings of the hearing panel that were unsupported by the evidence. The review department found that Conroy failed to keep Beaton informed of the status of his case, in violation of Business and Professions Code section 6068, subdivision (m), and acted in reckless disregard of his obligation to competently perform legal services by his prolonged inaction, in violation of former rule 6-101(A)(2). The review department also found that Conroy, by his default, admitted to misrepresenting facts about the status of the case and his actions to his client. These affirmative misrepresentations involve moral turpitude in violation of Business and Professions Code section 6106. (See *Gold* v. *State Bar* (1989) 49 Cal.3d 908, 914 [264 Cal.Rptr. 125, 782 P.2d 264] ["an attorney who intentionally deceives his client is culpable of an act of moral turpitude"].) Finally, the review department found Conroy violated former rule 2-111(A)(2) by his failure to respond to his client's new counsel and by failing to execute or explain his nonexecution of the substitution of attorney form.[7]

---

[7] In Conroy's "Answer" to the State Bar investigator, he claimed that he did not sign the substitution of attorney form because he had not become the "attorney of record" in the workers' compensation matter. The hearing panel specifically found that Leslie, Beaton's new counsel, did not know this and that Conroy did not tell him. Conroy now alleges, for the first time, that he did not sign the form because it was not properly executed and that he told

■ In attorney discipline matters, we do not impose discipline from a fixed formula. (*Levin* v. *State Bar* (1989) 47 Cal.3d 1140, 1150 [255 Cal.Rptr. 422, 767 P.2d 689]; *Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 24 [184 Cal.Rptr. 720, 648 P.2d 942].) Each case is determined on its own merits in light of the objectives of the disciplinary process—protection of the public, the courts and the legal profession; the promotion of confidence in the legal profession; and the maintenance of professional standards. (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1089 [245 Cal.Rptr. 404, 751 P.2d 463].)

In determining the appropriate discipline, we look to the standards for guidance. (*In re Young* (1989) 49 Cal.3d 257, 267, fn. 11 [261 Cal.Rptr. 59, 776 P.2d 1021].) ■ We conclude that under the applicable standards, the review department's recommended discipline is insufficient. First, for a willful failure to perform services in an individual matter (not demonstrating a pattern of misconduct), standard 2.4(b) provides for "reproval or suspension depending upon the extent of the misconduct and the degree of harm to the client." (Std. 2.4(b).) ■ Violations of Business and Professions Code, section 6106, are within the scope of standard 2.3, which provides for actual suspension or disbarment depending upon the harm to the client, the magnitude of the offense, and the relation to the practice. ■ Likewise, violations of Business and Professions Code section 6068, subdivision (m), are within the scope of standard 2.6(a), which also provides for suspension or disbarment, depending upon consideration of the same factors.

Standard 1.7, concerning discipline of an attorney who has prior offenses, is also applicable. If an attorney has two prior offenses, standard 1.7(b) provides for "disbarment unless the most compelling mitigating circumstances clearly predominate." ■ "While the State Bar Court should always look to the Standards . . . for guidance when making a disciplinary recommendation, it is not compelled to strictly follow them in every case." (*In re Young, supra,* 49 Cal.3d at p. 267, fn. 11.) Citing *Arm* v. *State Bar* (1990) 50 Cal.3d 763 [268 Cal.Rptr. 741, 789 P.2d 922], the hearing panel and the review department concluded that it would be too harsh to rigidly apply standard 1.7(b) in the present case. (*Arm* v. *State Bar, supra,* 50 Cal.3d at pp. 778-779, 781 [rejecting disbarment under standard 1.7(b) for

---

this to Beaton. (The form was signed by Leslie, but not Beaton.) Conroy failed to present either of these explanations during the formal State Bar proceedings. His current excuses for failing to sign the form are unsubstantiated. (He even fails to provide dates on which he notified Beaton or Leslie of his reasons for failing to execute the form.) Even if we were to accept Conroy's claims, for the sake of argument, there remains substantial evidence that he failed to cooperate with Leslie in violation of former rule 2-111(A)(2). Conroy repeatedly failed to communicate either orally or in writing with Leslie as to the status of Beaton's case.

an attorney with three priors, and instead ordering eighteen months' actual suspension].) As in *Arm*, the review department concluded that it was not required to treat all priors as having equal weight, but to consider the facts underlying the various proceedings in arriving at the appropriate discipline. Consequently, the review department accepted the hearing panel's finding that less weight should be given under the standards to Conroy's failure to take the Professional Responsibility Examination than to his earlier private reproval.[8] In determining the appropriate level of discipline, the hearing panel and the review department looked to standard 1.7(a) which provides that if an attorney has one prior offense, the degree of discipline imposed in the current proceeding shall be greater than that imposed in the prior discipline (i.e., the sixty days' actual suspension).

■■ Under relevant case authorities, an attorney with a prior record of discipline, who disregards his client's interests, makes affirmative misrepresentations to the client, and fails to cooperate with successor counsel and the State Bar should be subject to greater discipline than the review department's recommended six months' actual suspension. For example, in *Hansen* v. *State Bar* (1978) 23 Cal.3d 68 [151 Cal.Rptr. 343, 587 P.2d 1156], an attorney who failed to prosecute his client's tort and workers' compensation claims, and who misrepresented that the actions were progressing well, received an actual suspension of six months. Unlike Conroy, Hansen had *no* prior record of discipline. In *Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1097, 1101 [245 Cal.Rptr. 628, 751 P.2d 894], an attorney with *one* prior discipline misrepresented facts to his client. We stated that the attorney "displayed a cavalier disregard of his client's interests which could easily recur in the future" and imposed a six-month actual suspension.

In light of the absence of mitigating circumstances and the presence of several aggravating circumstances, we reject Conroy's contention that the recommended discipline is excessive. As in his previous disciplinary proceedings, Conroy has again ignored his obligation to participate in the State Bar proceedings. His refusal to participate shows that he fails " 'to appreciate the seriousness of the charges in the instant proceeding or to comprehend the importance of participating in the disciplinary proceedings.' " (*Conroy I, supra*, 51 Cal.3d at p. 805 [quoting *Yokozeki* v. *State Bar, supra*, 11 Cal.3d at p. 451]). ■■ " 'It is well settled that an attorney's contemptuous attitude toward the disciplinary proceedings is relevant to the determination of an appropriate sanction.' " (51 Cal.3d at p. 806.) ■■ Conroy jeopardized a client's case by his inaction; misrepresented facts to the client (an act of moral turpitude); and defaulted not only in this State Bar

---

[8] The review department did, however, reject the hearing panel's conclusion that failure to take the examination should not be considered a prior offense.

proceeding, but also in his previous disciplinary action. Conroy's behavior shows that he is not presently worthy of the public trust.

## DISPOSITION

We adopt the review department's findings and conclusions of law, but find its recommended discipline insufficient. Therefore, it is ordered that petitioner J. William Conroy be suspended from the practice of law for a period of five years; that execution of suspension be stayed; and that Conroy be placed on probation for five years subject to the conditions adopted by the review department, and the condition that Conroy be actually suspended from the practice of law for a period of one year.

It is also ordered that Conroy comply with the provisions of rule 955 of the California Rules of Court, and specifically paragraphs (a) and (c) thereof within 30 days and 40 days, respectively, of the effective date of the order of this court.[9]

This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

---

[9] It is not ordered that Conroy take the Professional Responsibility Examination again due to his passage of such examination in March of 1988.